Lisa TEAGUE, Appellant,

v.

CITY OF DALLAS et al., Appellees.

No. 05–10–01163–CV.

Court of Appeals of Texas,
Dallas.

May 4, 2011.

Grant B. Stock, Jessica Sharma Graham, Thomas Matthew Corea, The Corea Firm, P.L.L.C., Dallas, TX, for Appellant.

Todd Keith Sellars, Assistant District Attorney, Tatia R. Wilson, Barbara E. Rosenberg, City of Dallas Atty's Office, Jason G. Schuette, Office of the City Atty., Dallas, TX, for Appellees.

Before Justices MORRIS, MOSELEY, and RICHTER.

## OPINION

Opinion By Justice RICHTER.

After the vehicle in which Lisa Teague was a passenger was involved in a high-speed police chase resulting in a collision, Teague sued the City of Dallas (the "City") and Dallas County (the "County") under the tort claims act. The City and the County each filed a plea to the jurisdiction based on governmental immunity, and the trial court granted the pleas. In this interlocutory appeal, Teague asserts the trial court erred because the evidence raised fact issues concerning the negligent use and operation of motor-driven vehicles, and the trial court improperly excluded a witness statement. Teague further asserts the trial court erred in construing her pleading to allege intentional acts outside the scope of governmental immunity. Concluding Teague's arguments are without merit, we affirm the trial court's orders.

## I. BACKGROUND

On May 26, 2006, Dallas County deputy constable Billy Still was operating a patrol car while on duty when he noticed a 1988 four-door green Pontiac Grand Prix without a vehicle registration sticker on its windshield. The vehicle, driven by Jonathan Aponte, was traveling eastbound on East Illinois Avenue. Aponte's girlfriend, Teague, was a passenger in the vehicle. Officer Still attempted to initiate a traffic stop by turning on his emergency lights and siren, but Aponte refused to stop. As Officer Still followed the vehicle, he saw Teague's head briefly appear in the back seat of the car. Teague looked back at Still and then lowered her head. After a few minutes, Aponte increased the speed of his vehicle. Officer Still was eventually joined by another patrol car driven by deputy sheriff Darren Burgess. During the course of the pursuit, Aponte drove at speeds exceeding ninety miles per hour, disregarded red lights, and ran a stop sign. As the pursuit continued, Officer Still radioed for assistance. After Aponte ran a red light at the intersection of Buckner Boulevard and Bruton Road, Officers Gilbert Salinas and John Ross from the Dallas Police Department ("DPD") joined the chase. The DPD car took the lead, and the county deputies acted as backup. All of the patrol cars had their vehicle sirens and emergency lights activated, but there was no communication between the DPD officers and the county deputies because their radios are not on the same frequency. The patrol cars did not pull up beside Aponte's vehicle or attempt to bump it. The pursuit continued to North Buckner Boulevard, and as Aponte neared the intersection of Buckner and Peavy Road, he suddenly swerved his vehicle and cut across three lanes of traffic onto the connector road to northbound Peavy. As he did so, Aponte was traveling approximately eighty miles per hour and the DPD patrol car was approximately seventy yards away. When Aponte exited Buckner, he lost control of his vehicle when it rotated counterclockwise. None of the officers directed Aponte to exit Buckner, attempted to create a roadblock, or attempted to force Aponte's vehicle off the road. Around the time Aponte exited, Officer Steven Oliphant, an officer with the DPD, was headed southbound in the right curbside lane of traffic on Peavy to assist in the pursuit. Aponte's vehicle crossed over the center island curb into the southbound lane of traffic and its right passenger area collided with Officer Oliphant's patrol car. The last event Officer Oliphant recalled was either sitting still at the red light or approaching the red light waiting for it to turn green. Teague does not remember the collision, and Aponte died shortly after the accident.

Teague sued the City and the County under the Texas Tort Claims Act (the "Act") for personal injuries arising from the collision. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(A) (West 2005). Specifically, Teague asserted that her negligence claims fell within the Act's waiver of immunity arising from the operation or use of a motor-driven vehicle. Teague also asserted claims for negligent implementation of policy.

The City and the County each filed a plea to the jurisdiction. The County asserted the official immunity of its deputies and alleged that Teague's injuries did not arise from the use or operation of the County's vehicles. The City also asserted immunity and claimed there was no nexus between the operation of the city vehicle in pursuit of Aponte and Teague's injuries. The City further asserted there was no waiver of immunity for violation of a city policy. The trial court conducted evidentiary hearings on the pleas to the jurisdiction. When the hearings concluded, the trial court granted both the City's and the County's pleas and dismissed Teague's claims for want of subject-matter jurisdiction. This appeal followed.

## II. DISCUSSION

### Waiver of Immunity

In her first issue, Teague asserts the trial court erred in granting the pleas to the jurisdiction because her negligence claims fall within the waiver of immunity for personal injuries arising from the operation of a motor-driven vehicle. The City and County respond that the trial court properly concluded there was no subject-matter jurisdiction because Teague's claims did not invoke a waiver of governmental immunity.

■ An assertion of governmental immunity from suit challenges the trial court's exercise of subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225–26 (Tex.2004). Whether a trial court has subject matter jurisdiction is a question of law that this Court reviews de novo. *State v. Holland,* 221 S.W.3d 639, 642 (Tex.2007). In reviewing a trial court's ruling on a plea to the jurisdiction, we do not look to the merits of a case, but consider only the pleadings and the evidence relevant to the jurisdictional inquiry, and we construe the pleadings liberally in favor of conferring jurisdiction. *Harris Cnty. v. Luna–Prudencio,* 294 S.W.3d 690, 695–96 (Tex.App.-Houston [1st Dist.] 2009, no pet.).

■ In a case in which the jurisdictional challenge implicates the merits of the plaintiff's cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *Id.* at 696. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. *Id.* However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.*

■ When performing governmental functions, political subdivisions derive governmental immunity from the state's sovereign immunity. *See City of Galveston v. State,* 217 S.W.3d 466, 469 (Tex.2007). Governmental immunity from suit deprives the trial court of subject matter jurisdiction over a plaintiff's claims against a governmental entity unless the State consents to suit. *Miranda,* 133 S.W.3d at 224; *Dallas County v. Wadley,* 168 S.W.3d 373, 376 (Tex.App.-Dallas 2005, pet. denied). Thus, in a suit against a governmental unit, the plaintiff must affirmatively demonstrate

**438**

the trial court's jurisdiction by alleging a valid waiver of immunity. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex.2003).

■ The legislature granted a limited waiver of immunity in the tort claims act, which allows suits to be brought against governmental units in limited circumstances. *Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 587 (Tex.2001). When the governmental unit is a municipality, the waiver of immunity analysis begins with the determination of whether the governmental unit was engaged in a governmental function at the time of the action giving rise to the claim. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.0215(a) (West 2005). When the governmental unit is a county, however, this step of the inquiry is unnecessary because all of the functions of a county are governmental. *See e.g., Nueces County v. San Patricio County*, 246 S.W.3d 651, 652 (Tex.2008) (stating counties have no proprietary functions; all functions are governmental). Once it is determined that a governmental function is involved, the question becomes whether the allegations meet the requirements of section 101.021. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.021 (West 2005). Section 101.021 provides that a governmental unit is liable (and may be sued) for:

(1) Property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of his employment if:

(A) The property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) The employee would be personally liable to the claimant according to Texas law. . . .

*See id.; see also Whitley*, 104 S.W.3d at 542–43. In the present case, there is no dispute that the police action at issue involves a governmental function. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.0215(a)(1)(West 2005). Therefore, our inquiry turns on whether Teague's injuries arose from the negligent operation of a motor-driven vehicle pursuant to section 101.021.

■ Teague argues that the city officers and county deputies violated policies and procedures mandating termination of a chase resulting from a traffic violation if the dangers of pursuit are too great. According to Teague, the use and operation of the city and county vehicles in contravention of these policies proximately caused the injuries she sustained as a passenger in Aponte's car.[1] We are not persuaded by this argument.

■ In addition to "operation" or "use," the tort claims act requires a plaintiff to establish a causal connection between the governmental employee's actions and the plaintiff's injuries. Tex. Civ. Prac. & Rem.Code Ann. § 101.021(1)(A). Therefore, for liability to "arise from" the use of a motor vehicle, there must be a nexus between the injury and the operation of the vehicle. *See Whitley*, 104 S.W.3d at 543; *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex.2001); *Gipson v. City of Dallas*, 247 S.W.3d 465, 471 (Tex.App.-Dallas 2008, no pet.). As this court recently observed:

When an alleged cause is geographically, temporally, or causally attenuated from the alleged effect, that attenuation will

---

1. The City and County argue there is no waiver of immunity for negligent implementation of policy. But we do not construe Teague's appellate challenge to assert waiver on this basis. Instead, Teague appears to argue the policy violation as a component of proximate cause.

tend to show that the alleged cause did no more than furnish the condition that made the effect possible.

*City of Dallas v. Hillis,* 308 S.W.3d 526, 532 (Tex.App.-Dallas 2010, pet. denied) (citing *Dallas County Mental Health & Retardation v. Bossley,* 968 S.W.2d 339, 343 (Tex.1998)). Thus, the causal nexus requires more than mere involvement of the property; the vehicle's use must have actually caused the injury. *Whitley,* 104 S.W.3d at 543; *Hillis,* 308 S.W.3d at 532.

Here, the pleadings do not allege and the evidence does not demonstrate a nexus between the operation of the city and county vehicles and the injuries Teague sustained. With regard to the County, Teague's second amended petition asserts that the officers were in pursuit of Aponte despite policies requiring the suspension of the pursuit. Teague asserts the same as to Officer Oliphant, and adds that Officer Oliphant joined in the pursuit and drove to intercept Aponte ahead of his location. But there are no facts asserting that Officer Oliphant was actually involved in the pursuit at the time of the accident, or that he did anything more than respond to a call for assistance. The pleadings also do not assert facts to suggest the City or County vehicles were driven in a negligent manner or that the operation of the vehicles caused Teague's injuries. To the contrary, the pleadings state that Aponte made a sharp turn in an effort to change direction and "lost control of his vehicle and crashed into Officer Oliphant." This suggests that Aponte, not the City or County, was the cause of Teague's injuries.

Similarly, the evidence adduced at the hearings showed that the collision occurred because Aponte lost control of his vehicle when driving recklessly at excessive speeds. Teague admitted she had no knowledge of how the collision occurred, and could not identify anything any officer may have done to cause her injuries. The evidence showed that at the time of the accident, the county vehicles were well behind Aponte's, and the DPD patrol car in the lead was approximately seventy yards away. Officer Oliphant was not blocking or obstructing the connector road to northbound Peavy Road when Aponte exited from Buckner, and there is no evidence to establish that he had actually joined the pursuit at that time. Neither the City nor the County vehicles ever attempted to run Aponte's vehicle off the road, pull up beside Aponte's vehicle, or bump it. None of the evidence controverted any of these facts or otherwise raised an issue of fact concerning the negligent operation of the City and County vehicles. Therefore, the County's and the City's operation of their vehicles was too physically and temporally separated from Aponte's conduct to constitute a cause of Teague's injuries. *See Hillis,* 308 S.W.3d at 534. Because the operation of the vehicles is too attenuated from the injuries, the trial court did not err in granting the pleas to the jurisdiction. Teague's first issue is overruled.[2] See Tex.R.App. P. 47.1.

### Exclusion of Evidence

During the hearing, Teague introduced the handwritten statement of Eric Dean, a witness to the accident. The City objected to the statement and the trial court sustained the objection. In her second issue, Teague argues the statement was competent evidence and the trial court erred in refusing to admit it into evidence. But we need not determine whether the statement was competent evidence, because even if it was, Teague fails to demonstrate how the evidence was relevant to the jurisdictional inquiry. *See e.g., Mi-*

---

2. Our resolution of this issue obviates the need to consider Teague's third issue (asserting the trial court erred in construing her pleading to allege intentional conduct outside the scope of sovereign immunity). See Tex R.App. P. 47.1.

*randa,* 133 S.W.3d at 227 (trial court must consider *relevant* evidence).

Dean's unsworn, handwritten statement recited that he saw Officer Oliphant's vehicle in the middle of Peavy Road. According to Dean, Aponte appeared to try to avoid colliding with Officer Oliphant's vehicle, but instead hydroplaned and crashed into the vehicle. Other evidence before the court established that Officer Oliphant was traveling south in the far right hand lane of Peavy Road when the collision occurred. Dean's statement does not controvert this evidence, nor does it state that Officer Oliphant obstructed traffic or disobeyed traffic laws. In essence, Dean's statement merely provides additional evidence that Aponte lost control of his vehicle before the collision occurred. Because the statement does not raise a fact question about whether Officer Oliphant was negligent or whether his negligence caused Teague's injuries, we cannot conclude the trial court erred in refusing to admit it. Teague's second issue is overruled.

Having resolved all of Teague's issues against her, we affirm the trial court's orders.