

NUMBER 13-10-00689-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

FRANCISCO MUNIZ, INDIVIDUALLY AND
AS REPRESENTATIVE OF THE ESTATE
OF MARGARITA MARISELA MUNIZ,
FRANCISCO MUNIZ JR., ALONDRA MUNIZ,
AND DIEGO MUNIZ,                                               Appellants,

v.

CAMERON COUNTY,                                                Appellee.

On appeal from the 445th District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Justices Rodriguez, Vela, and Perkes**
**Memorandum Opinion by Justice Perkes**

Appellants, Francisco Muniz, Individually and as Representative of the Estate of

Margarita Marisela Muniz, Francisco Muniz, Jr., Alondra Muniz, and Diego Muniz

(collectively "appellants") appeal the trial court's order granting Cameron County's plea to

the jurisdiction. Appellants sued the County nearly two years after Margarita Marisela Muniz died in a fatal auto collision. A deputy sheriff was attempting to stop a speeding pickup truck when the truck struck the vehicle Mrs. Muniz was driving.

By two issues, appellants argue: (1) the trial court erred by granting the County's plea to the jurisdiction because the evidence shows the County received actual notice of appellants' claim as is required under Texas Civil Practice and Remedies Code section 101.101(c); or (2) in the alternative, this case should be remanded to the trial court because there is a fact issue regarding whether appellants gave the County actual notice of their claim within six months of the fatal traffic collision. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(c) (West 2011). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellants' first amended original petition was filed on September 23, 2009, and was their live pleading at the time the trial court entered its order granting the County's plea to the jurisdiction. Appellants' petition and the undisputed evidence submitted on the jurisdictional issue show the following facts.

In the early morning hours of July 10, 2007, Deputy Jose Martinez, a deputy sheriff with the Cameron County Sheriff's Department, was on a routine patrol in Cameron Park, Brownsville, when he saw a young male exit a black pickup truck and look toward him. Deputy Martinez decided to investigate because of the area and time of day. As he approached the individual who had exited the truck, he noticed the truck turn left onto Paredes Line Road and take off at a high rate of speed. Deputy Martinez decided to follow the truck instead of approaching the individual. By the time Deputy Martinez arrived at the intersection, the truck was a significant distance ahead of him.

2

Upon turning onto Paredes Line Road, Deputy Martinez activated his lights and siren and began to accelerate in an attempt to stop the speeding truck. Deputy Martinez stated that he believed he needed to intervene to keep the driver of the truck from hurting someone. In deciding to initiate a traffic stop, he took into account that he was familiar with the road and that he believed there would be few drivers on the road at that hour. Deputy Martinez was able to get close enough to make out a partial license-plate number. He then observed the truck veer to the left, cross over the lanes of traffic and middle turn lane and move into the path of oncoming traffic. He saw the truck strike Mrs. Muniz's vehicle. She died at the scene.

The accident occurred less than two miles from Cameron Park where Deputy Martinez first observed the truck, and the entire pursuit lasted about a minute. The Brownsville Police Department investigated the accident because the accident occurred in its jurisdiction. Their police report did not state that Deputy Martinez was a cause of the accident. Rather, it showed that before the collision, Deputy Martinez was only close enough to the truck to obtain a partial license-plate number.

The investigating officer determined that Ernesto Moreno, the driver of the truck, was responsible for the accident and, consequently, Mrs. Muniz's death. Moreno was found to be under the influence of cocaine, marijuana, barbiturates, and amphetamines at the time of the accident, and the truck he was driving had been reported stolen at least a day prior to the accident. Cameron County indicted Moreno. Moreno pleaded guilty to manslaughter and asked the trial court to determine his sentence. Moreno addressed the Muniz family during his sentencing and apologized to them. In his statement to the Muniz family, he took full responsibility for the collision. He did not state that Deputy Martinez was responsible for

3

the collision.

In July 2007, appellants sued Ernesto Moreno and Juan Velez, the owner of the pickup truck. The County was not given notice of this lawsuit. The lawsuit was never prosecuted and was later dismissed. July 2, 2009, the date the present lawsuit was filed, was the first time appellants notified the County of their intent to hold the County responsible for Mrs. Muniz's death.

In their original petition, appellants alleged that the County was liable for their damages because Deputy Martinez initiated and continued a reckless, high-speed pursuit. In their first amended petition and in their response to the County's plea to the jurisdiction, appellants added that Deputy Martinez caused the collision because he "bumped" Moreno's truck at least three times, causing it to move into oncoming traffic and to strike Mrs. Muniz's vehicle.

Appellants supported their "bumping" allegation with an affidavit from Moreno, stating that Deputy Martinez tailgated him, then bumped the right, rear of the truck three times. In his affidavit, Moreno elaborated that the third bump sent him into the oncoming traffic. In his opinion, Deputy Martinez "was trying to make [him] spin out, but he hit … on the wrong side … into oncoming traffic." Moreno added that, "[i]f I had not been bumped by the deputy I would not have had the wreck." He admitted in his affidavit that he was driving between seventy and ninety miles per hour at the time, but stated that he was a careful driver.

The record reflects that Moreno never told anyone about the "bumping" prior to this lawsuit, except allegedly his criminal-defense attorney. There was no physical damage to the cruiser or the truck which would have indicated that the cruiser made contact with either of the vehicles involved in the accident. The Brownsville Police Department investigation

4

only attributed responsibility for the accident to Moreno.

The County filed a plea to the jurisdiction, arguing that it had no actual notice of appellants' claim within six months of the collision and that, as a result, the trial court lacked jurisdiction. *See* Tex. Civ. Prac. & Rem. Code. § 101.101(c); *see also City of Pharr v. Aguillon*, No. 13-09-00011-CV, 2010 WL 1138449, at *3–4 (Tex. App.—Corpus Christi Mar. 25, 2010, no pet.) (mem. op.). After the parties engaged in a significant amount of discovery and presented evidence on the notice issue,[1] the trial court granted the County's plea to the jurisdiction, and this appeal followed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2011) (authorizing interlocutory appeal from a district court's order granting a governmental unit's plea to the jurisdiction).

## II. Standard of Review and Applicable Law

A plea to the jurisdiction is a dilatory plea; its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's jurisdiction over the subject matter of a pleaded cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Parks & Wildlife Dep't v. Morris*, 129 S.W.3d 804, 807 (Tex. App.—Corpus Christi 2004, no pet.). Subject-matter jurisdiction is a question of law; therefore, an appellate court reviews de novo a trial court's ruling on a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 226; *Morris*, 129 S.W.3d at 807.

Because immunity from suit defeats a trial court's subject-matter jurisdiction, it may be properly asserted in a jurisdictional plea. *Miranda*, 133 S.W.3d at 225–26. In a suit

---

[1] Although the clerk's record shows that an oral hearing was held on the County's plea to the jurisdiction, the record on appeal does not include a reporter's record of that hearing.

5

against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). When a trial court's decision concerning a plea to the jurisdiction is based on the plaintiff's petition, we accept as true all factual allegations in the petition to determine if the plaintiff has met its burden. *Id.*; *Morris*, 129 S.W.3d at 807. We examine the pleader's intent and construe the pleading in the plaintiff's favor. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002) (per curiam). However, a court deciding a plea to the jurisdiction is not required to look solely to the pleadings, but must consider jurisdictional evidence as necessary to determine any jurisdictional issue presented. *Blue*, 34 S.W.3d at 555.

Under the doctrine of governmental immunity, a county is immune from tort liability for its own acts and the acts of its agents, unless the Texas Tort Claims Act clearly and unambiguously waives immunity. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(B) (West 2011); *Dallas County v. Posey*, 290 S.W.3d 869, 871 (Tex. 2009). The Texas Tort Claims Act waives immunity for death proximately caused by the wrongful act or omission or negligence of a government employee acting within the scope of his employment if the injury arises from operating or using a motor vehicle or motor-driven equipment and the employee would be personally liable to the claimant according to Texas law. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1).

"Operation" refers to "doing or performing of a practical work" and "use" is defined in the context of this statute as "put[ting] or bring[ing] into action or service; employ[ing] for or apply to a given purpose." *LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49,

6

51 (Tex. 1992); *see also Starkey v. Andrews*, 104 S.W.3d 626, 629 (Tex. App.—Tyler 2003, no pet.). The Supreme Court of Texas has interpreted the "arises from" requirement to mean that the vehicle's use "must have actually caused the injury." *Whitley*, 104 S.W.3d at 543. This causal nexus is not satisfied by the mere involvement of a vehicle nor by an operation or use that "does no more than furnish the condition that makes the injury possible." *Id.*; *see also City of Kemah v. Vela*, 149 S.W.3d 199, 204 (Tex. App.—Houston [14th Dist.] 2004, pet. denied); *Gill v. Tex. Dep't of Criminal Justice*, 3 S.W.3d 576, 581 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

To take advantage of a waiver of immunity under the Texas Tort Claims Act, the Act requires that a governmental unit receive notice of a claim against it within six months of the incident giving rise to the claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101; *Colquitt v. Brazoria County*, 324 S.W.3d 539, 541 (Tex. 2010). A governmental unit is entitled to a formal, written notice of a claim within six months of the incident unless it receives actual notice within six months of the incident. *See Tex. Dep't of Criminal Justice v. Simons,* 140 S.W.3d 338, 339 (Tex. 2004) (citing *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995) (per curiam)).[2] The Texas Tort Claims Act's notice requirement is jurisdictional. *See* TEX. GOV'T. CODE ANN. § 311.034 (West 2011); *Colquitt*, 324 S.W.3d at 543. The discovery rule does not apply to extend the six-month notice period even when this produces a harsh result. *Timmons v. Univ. Med. Ctr.*, 331 S.W.3d 840, 848 (Tex. App.—Amarillo 2011, no pet.); *Univ. of Tex. Med. Branch at Galveston v. Greenhouse*, 889 S.W.2d 427, 431–32 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

---

[2] The *Simons* court held that the Texas Tort Claims Act's notice requirement is not jurisdictional, a holding which has been superseded by statute. *See* TEX. GOV'T. CODE ANN. § 311.034 (West 2005) (superseding *Tex. Dep't of Criminal Justice v. Simons,* 140 S.W.3d 338, 339 (Tex. 2004)).

The notice requirement ensures prompt reporting of a claim to enable the government to investigate while the facts are fresh and the conditions remain substantially the same. *Colquitt*, 324 S.W.3d at 543. The notice provision also aids the government in the management and control of its finances and property. *Id.; see also Cathey*, 900 S.W.2d at 341 ("The purpose of the notice requirement is to ensure prompt reporting of claims in order to enable governmental units to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial.").

### III. DISCUSSION

By their first and second issues, appellants argue that the record shows the County had actual notice of its claim against it within six months of the fatal collision, or in the alternative, that there is a fact issue on the question of actual notice, such that the trial court should have denied the County's plea to the jurisdiction. In support of their actual-notice argument, appellants rely on the police report and other evidence in the record, such as newspaper articles showing that Deputy Martinez was pursuing Moreno at the time of the collision; Moreno's affidavit testimony that Deputy Martinez bumped him into oncoming traffic; and the Cameron County Sheriff's Department manual,[3] which provided that an officer must receive immediate authorization from a supervisor to "continue a pursuit" once a traffic pursuit has been initiated and the dispatcher has been notified of it.

Appellants argue that under the Supreme Court of Texas's *Arancibia* decision, these facts show actual notice to the County and that the trial court should have denied the County's plea to the jurisdiction. *See Univ. of Tex. S.W. Med. Ctr. at Dallas v. Estate of*

---

[3] Near the end of their appellate brief, appellants argue that the sheriff's department manual constituted a contract of which Mrs. Muniz was a beneficiary, and that the County is liable and was on notice under a breach-of-contract theory. Because appellants failed to support this argument with citation to legal authority, it presents nothing for our review. *See* TEX. R. APP. P. 38.1(i).

8

*Arancibia*, 324 S.W.3d 544, 550 (Tex. 2010). In response, the County argues that because appellants did not give timely notice of their claim that Deputy Martinez somehow caused the collision by allegedly bumping Moreno's truck into Mrs. Muniz's lane, the trial court lacked jurisdiction over the case.

Actual notice to a governmental unit requires knowledge of: (1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved. *See Cathey*, 900 S.W.2d at 341; *see also Aguillon*, 2010 WL 1138449, at *3*. To have actual notice within the context of section 101.101, the governmental unit must have the same information it would have had if the claimant had complied with the formal notice requirements. S*ee Bourne v. Nueces County Hosp. Dist.,* 749 S.W.2d 630, 633 (Tex. App.—Corpus Christi 1988, writ denied); *see also Arancibia*, 324 S.W.3d at 550*.* Mere notice that an accident has occurred is not sufficient to establish actual notice for purposes of the Texas Tort Claims Act. *See Cathey,* 900 S.W.2d at 340; *Garcia v. Tex. Dep't of Criminal Justice,* 902 S.W.2d 728, 730–31 (Tex. App.—Houston [14th Dist.] 1995, no writ)).

"Alleged fault" includes the governmental unit's "subjective awareness of its fault, as ultimately alleged by the claimant, in producing or contributing to the claimed injury":

> It is not enough that a governmental unit should have investigated an incident as a prudent person would have, or that it did investigate, perhaps as part of routine safety procedures, or that it should have known from the investigation it conducted that it might have been at fault. If a governmental unit is not subjectively aware of its fault, it does not have the same incentive to gather information that the statute is designed to provide, even when it would not be unreasonable to believe that the governmental unit was at fault.

*Simons,* 140 S.W.3d at 347–48. When records or investigative reports give no indication that a governmental unit has been at fault in an incident, the governmental unit has no actual

9

notice. *Id.* The determination of whether a governmental unit received actual notice is a question of fact but may be determined as a matter of law where the evidence is insufficient to raise a fact issue. *See Arancibia*, 324 S.W.3d at 549; *see also Aguillon*, 2010 WL 1138449, at *4.

The record shows that the Brownsville Police Department was responsible for investigating the accident. In its report, the Police Department concluded that Moreno, who was the driver of the truck that struck Mrs. Muniz's vehicle, was at fault. The Police Department also found that Moreno was driving under the influence of multiple drugs at the time of the accident and that the truck had been reported stolen. Moreno was indicted for manslaughter as a result of the collision.

The County's dispatch log shows that Deputy Martinez informed the dispatcher that he was in pursuit of Moreno's truck; that the accident happened shortly into this conversation; and that Deputy Martinez requested that the dispatcher contact the EMS. The entire pursuit lasted approximately one minute. Neither the police report nor the dispatch log suggests that Deputy Martinez's cruiser was close enough to the truck to make contact with it. Rather, the police report indicates that during the pursuit, Deputy Martinez was only close enough to see part of the truck's license-plate number. It was not until appellants filed their first amended original petition in September 2009, well after the expiration of the six-month notice period, that they first claimed Deputy Martinez somehow caused the collision by allegedly bumping Moreno's truck.

Timely knowledge of the pursuit alone is insufficient to place the County on actual notice of appellants' claim in this case, particularly because the pursuit alone did not give rise to a waiver of immunity under the Act. *See City of Dallas v. Hillis*, 308 S.W.3d 526,

10

534–35 (Tex. App.—Dallas 2010, pet. denied) (holding the Texas Tort Claims Act did not waive immunity for wrongful-death claim brought against City for police officer's high-speed pursuit of motorcyclist because there was an insufficient nexus between the officer's use of his car and the fatality; the motorcyclist's evasion was an intervening cause and the officer did not hit the motorcycle); *accord Teague v. City of Dallas*, 344 S.W.3d 434, 439 (Tex. App.—Dallas 2011, pet. denied).   Moreno veering his truck into Mrs. Muniz's lane and causing her death, combined with the fact that Deputy Martinez did not hit either vehicle under the pursuit-only theory of the case, render mere notice of the pursuit insufficient to place the County on notice that appellants would seek to hold it responsible for the fatal collision.   *See Hillis*, 308 S.W.3d at 534–35; *City of Dallas v. Carbajal*, 324 S.W.3d 537, 539 (Tex. 2010) (per curiam) (holding police report that stated one-vehicle auto accident was caused by missing barricades on excavated road did not provide City actual notice of claim because report did not provide City subjective awareness of fault by stating or even implying City was at fault for missing barricades); *see also Benavides v. Dallas-Fort Worth Int'l Airport*, 946 S.W.2d 576, 579 (Tex. App.—Dallas 1997, no writ) (holding police report concerning similar, previous one-car accident at airport was insufficient to provide airport actual notice of claim when report did not inculpate the airport).

This case is distinguishable from the *Arancibia* case on which appellants rely.   In *Arancibia* there was only one possible instrumentality of the harm—the governmental actor. *See* 324 S.W.3d at 549–50.   Additionally, in that case, the record showed that the governmental actor was subjectively aware, within days of the fatality, that its error alone

caused the complained-of injury.[4]  *See id.*   Irene Arancibia died three days after two resident physicians performed laparoscopic hernia surgery on her.  *Id.* at 546.   Arancibia was released from the hospital the same day of the surgery, but returned to the emergency room two days later with severe abdominal pain.  *Id.*  Emergency surgery showed that during the hernia operation, her bowel was perforated, leading to acute peritonitis, sepsis, and ultimately her death.  *Id.*

The Supreme Court of Texas held that the record showed Southwestern Medical Center was subjectively aware of its fault as ultimately alleged by the Arancibias, and that it had actual notice of the claim, under the Texas Tort Claims Act.  *Id.* at 550.   Dr. Watson, an attending physician, was present while the two resident physicians performed the hernia repair.  *Id.* at 549.   The day after Arancibia's death, Dr. Watson emailed his immediate supervisor, who was the chief of the gastrointestinal/endocrine division.  *Id.* at 546, 549.  Dr. Watson wrote that he wanted to give his supervisor a "heads up on a terrible outcome with" a patient.  *Id.* at 549.   He described the surgery, which he believed went well, and the patient's return to the emergency room with "an unrecognized bowel injury."  *Id.*  He stated that "I have already spoken with risk" management.  *Id.*

Shortly thereafter, having reviewed Arancibia's treatment, Dr. Watson's supervisor concluded that a "technical error occurred during the original hernia operation resulting in" two perforations in Arancibia's small intestine, and further that "[c]linical management contributed to" Arancibia's death.  *Id.*  The supervisor stated that "[a]lthough unfortunate, this is a recognized complication of laporoscopic hernia surgery.  No standard of care

---

[4]   We note that to the limited extent appellants rely on case law concerning whether official immunity bars a claim against an officer for a high-speed pursuit, that reliance is misplaced because the County's plea to the jurisdiction was based on lack of actual notice and not on an official-immunity defense.  *See e.g.*, *Tex. Dep't. of Public Safety v. Rodriguez*, 344 S.W.3d 483, 488–89 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

issues were identified upon review." *Id.* The Supreme Court concluded that Southwestern was subjectively aware of its fault as ultimately alleged by the Arancibias, and that Southwestern could not evade the actual-notice determination by subjectively refuting its fault. *Id.* at 550. The Supreme Court observed that the purpose of the notice requirement is to enable governmental units to investigate and address claims appropriately, which was satisfied by Southwestern's actual notice. *Id.*

In this case, the record shows, as a matter of law, the County was not aware of its fault, as ultimately alleged by appellants, until well beyond the six-month notice period.[5] The record further shows that since the fatal collision, witnesses have expressed difficulty recalling facts in their depositions taken over two years after the collision, and that Deputy Martinez's cruiser was destroyed in a subsequent non-pursuit accident in which a driver struck the cruiser. If the County had received actual notice of appellants' claim, it would have been better able to gather information and address appellants' ultimate claim in this lawsuit. *See id.* For the foregoing reasons, we overrule appellants' issues on appeal.

## IV. Conclusion

We affirm the trial court's order granting the County's plea to the jurisdiction.

GREGORY T. PERKES
Justice

Delivered and filed the
10th day of May, 2012.

---

[5] We note that any actual notice on Deputy Martinez's part would not be imputed to the County in this case because the record shows the Brownsville Police Department, and not Deputy Martinez, was charged with investigating the collision. *See City of Wichita Falls v. Jenkins*, 307 S.W.3d 854, 858 (Tex. App.—Fort Worth 2010, pet. denied) (explaining that for actual notice under the Texas Tort Claims Act to be imputed from an agent to the governmental entity, the person possessed of the actual notice must have a duty to investigate the facts and report them to the governmental unit); *McDonald v. State*, 936 S.W.2d 734, 738 (Tex. App.—Waco 1997, no writ) (holding same).

13