

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

No. 08-25-00048-CV

---

Texas Department of Public Safety, Appellant

v.

Rocio Elizabeth Reyes, individually and as next friend of S.V.R., Appellee

---

On Appeal from the 293rd District Court
Maverick County, Texas
Trial Court No. 23-07-42332-MCV

---

## MEMORANDUM OPINION[1]

After leading multiple law enforcement agencies and officers on a 28-mile chase at speeds

of over 120 miles per hour, Bryam David Gardner Chaparro collided with a vehicle occupied by

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

Appellees Rocio Elizabeth Reyes and her minor son, S.V.R.[2] On behalf of herself and her son, Reyes filed suit against the law enforcement agencies involved in the pursuit, including Appellant Texas Department of Public Safety.[3] DPS filed a plea to the jurisdiction claiming sovereign immunity from suit and now appeals the trial court's order denying its plea. We reverse and render judgment dismissing the claims against DPS.

## I. FACTS

On an afternoon in September 2021, the United States Border Patrol requested assistance in apprehending Chaparro who was suspected of human trafficking. DPS troopers Joshua Patlan, Sarah Booth-Hernandez, Brian Coleman, and Micah Rucker were in the area and responded to the request.

As Patlan approached the Border Patrol checkpoint, he saw Chaparro make an illegal U-turn to evade a Border Patrol officer. He began to pursue Chaparro at speeds of over 120 miles per hour and officers from other law enforcement agencies joined the pursuit. Meanwhile, Booth-Hernandez, Coleman, and Rucker were all located in the direction towards which Chaparro was headed. They each attempted to stop Chaparro with "stop sticks" or "spike strips" (used to puncture and deflate a suspect's tires), but only Rucker was able to successfully deploy them before Chaparro reached his location. Chaparro drove over the spike strip with one tire but did not lose control of his vehicle and continued driving. Rucker did not participate further but Booth-Hernandez and Coleman joined the pursuit.

The pursuit continued for 28 miles, approximately eight of which were after Chaparro lost his tire. At times, Chaparro passed in no-passing zones or veered off the road to pass drivers on

---

[2] We refer to the minor by his initials to protect his privacy. Tex. R. App. P. 9.9(a)(3) (sensitive data includes the name of a person who was a minor when the suit was filed).

[3] Reyes also included as defendants Chaparro and companies related to Avis Budget Car Rental from which Chaparro rented his vehicle. Those defendants are not parties to this appeal.

the right. Although the three DPS troopers continued the chase, none were close enough behind Chaparro to witness the accident.

DPS Sergeant Christopher Tamez conducted a review of DPS actions after the accident. He stated that he "believe[ed] that a reasonable and prudent officer, under the same or similar circumstances as Trooper Patlan, could have believed that his conduct was justified based on the information he possessed when the conduct occurred[.]" Also submitted with the plea to the jurisdiction were videos from the dashboard and body cameras of the troopers and the incident and crash reports.

Reyes filed an unverified response to the plea to the jurisdiction. She asked that the trial court defer its ruling to allow her to conduct discovery on the jurisdictional issues. She also argued that the plea to the jurisdiction should be denied because there were fact issues about whether DPS's sovereign immunity was waived and, if so, whether an exception to the waiver applied. She did not attach any evidence to her response.

After a non-evidentiary hearing, the trial court took the case under advisement and, a week later, denied the plea to the jurisdiction. The trial court did not state the basis for its ruling.

DPS filed this interlocutory appeal. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (allowing for an interlocutory appeal of a ruling on a plea to the jurisdiction by a governmental unit). DPS claims that it was immune from suit and entitled to a dismissal on its plea to the jurisdiction for four reasons. First, DPS argues that its sovereign immunity was not waived because Reyes failed to show that the accident was caused by DPS's negligent use of a motor vehicle (issue three) or tangible personal property (issue four). Further, it argues that immunity was not waived because the troopers had official immunity and could not be held personally liable (issue two). Even if immunity was waived, DPS contends, the troopers' conduct brought them within the emergency exception to the waiver of immunity (issue one). Finally, DPS argues that even if we agree with the trial court that immunity from suit was waived, DPS urges that the trial court erred

3

in failing to dismiss Reyes's claims for exemplary damages, for which there is no waiver (issue five).

## II. ANALYSIS

### A. Sovereign immunity and standard of review

Texas and its governmental units are immune from liability and suit unless the Legislature has expressly waived immunity. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 93–94 (Tex. 2012). DPS, as a state agency, is a governmental unit protected by immunity. Tex. Gov't Code Ann. § 411.002(a); Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(a). Plaintiffs suing a governmental unit have the burden of pleading and establishing a waiver of immunity. *City of Austin v. Powell*, 704 S.W.3d 437, 447 (Tex. 2024). A governmental unit asserting its immunity can challenge the sufficiency of the pleadings, *i.e.*, that they do not allege facts that would result in a waiver of immunity, or it can challenge the accuracy or existence of the facts alleged. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). The burden of proof and standard of review is like that for summary judgments. When the challenge is to the facts and the government defendant submits evidence in support of its plea to the jurisdiction, the burden shifts to the plaintiff to submit evidence that raises a genuine issue of material fact. *Id.* at 770–71 "[W]e must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor" but at the same time, "we cannot disregard evidence necessary to show context, and we cannot disregard evidence and inferences unfavorable to the plaintiff if reasonable jurors could not." *Id.* at 771; *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528–29 (Tex. 2022). A plea to the jurisdiction must be denied if there remains a question of fact on which jurisdiction depends. *Id.* We review a trial court's jurisdictional ruling *de novo*. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 26 (Tex. 2004).

### B. Waiver of immunity

Relevant to this case, the Texas Tort Claims Act waives immunity for the following:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

  (A) the property damage, personal injury, or death arises from **the operation or use of a motor-driven vehicle** or motor-driven equipment; and

  (B) the employee would be **personally liable** to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or **use of tangible personal or real property** if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (emphasis added).

### (1) Injury caused by use of tangible personal property

Reyes had the burden of alleging facts in her petition that would bring DPS's conduct within a waiver of immunity. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). Reyes's petition claimed that her and her son's injuries were caused by the "improper pursuit" of Chaparro. This contention alleges a waiver of immunity under the first subsection of § 101.021 for injuries that arise from the use of a motor-driven vehicle. In her response to the plea to the jurisdiction (and now on appeal), Reyes argued that immunity was *also* waived under the second subsection, asserting that "DPS's deployment of the spike strips was a negligent use of tangible personal property that caused [their] injuries." However, because Reyes never alleged in her petition that DPS's immunity was waived because of its negligent use of tangible property, the trial court erred to the extent it denied DPS's plea to the jurisdiction based on that ground.[4] We sustain DPS's third issue.

---

[4] DPS also argues that Reyes failed to produce any evidence that the spike strips *caused* the accident, which occurred approximately eight miles after the spike strips were used. It further contends that even if there were evidence of causation, such tort would be an intentional tort for which there is no waiver of immunity. Because we hold that Reyes did not plead this ground of waiver of immunity, we do not reach these arguments.

### (2)   Injury caused by the use of a motor-driven vehicle

For the Legislature to have waived immunity under § 101.021, the injury must have been proximately caused by the government employee's use of a motor vehicle. Tex. Civ. Prac. & Rem. Code Ann. § 101.021; *Rattray v. City of Brownsville*, 662 S.W.3d 860, 873–74 (Tex. 2023). If the vehicle's use is "geographically, temporally, or causally attenuated" from the accident, it does not provide the nexus between the injury and use of the vehicle needed for a waiver of immunity. *Ryder Integrated Logistics, Inc. v. Fayette Cnty.*, 453 S.W.3d 922, 929–30 (Tex. 2015) (quoting *City of Dallas v. Hillis*, 308 S.W.3d 526, 532 (Tex. App.—Dallas 2010, pet. denied).

The parties dispute whether DPS's use of its vehicles was causally attenuated from the collision. Reyes cites our decision in *City of El Paso v. Cangialosi*, 632 S.W.3d 611 (Tex. App.—El Paso 2020, no pet.). In that case, we held that although police vehicles were not involved in the collision, the "pursuit by the police in their vehicles is the act that is *alleged* to have caused [the suspect] to speed, as he fled to get away." *Id*. at 625–26. We held that was a sufficient nexus between the use of the government vehicle and the accident to survive the plea to the jurisdiction. *Id.* at 626. But, other courts, including the court from which this case is transferred, have held that a collision between a fleeing suspect and a third party was caused by the *fleeing suspect's* use of his vehicle, not the *officer's* use of his. Tex. R. App. P. 41.3 ("the court of appeals to which the case is transferred must decide the case in accordance with the precedent of the transferor court[.]"). In *Lopez v. Escobar*, the San Antonio court of appeals held that an accident was not caused by the deputy's pursuit of a suspect, but by that driver's "decision to try to flee by darting out into traffic." *Lopez v. Escobar*, No. 04-13-00151-CV, 2013 WL 4679062, at *6 (Tex. App.—San Antonio Aug. 28, 2013, no pet.) (mem. op.). Recently, the Dallas court of appeals, in considering facts like those before us, found that:

> The officers were simply maintaining the same speed as the suspect vehicle in order to continue the pursuit. The officers did not do anything to force the suspect driver to increase his speed in excess of 100 miles per hour or to run red lights.

> Those were the choices of the suspect driver after deciding to flee from police and attempt to outrun them, and it was the suspect driver's use of his vehicle that caused Harper's injuries.

*Town of Prosper v. Harper*, No. 05-24-01029-CV, 2025 WL 1909496, at *5 (Tex. App.—Dallas July 8, 2025, no pet.) (mem. op.); *see also Hillis*, 308 S.W.3d at 534 ("[T]he only actual cause of Hillis's accident was his own decision to attempt to exit to eastbound Interstate 635 at a reckless rate of speed.").

However, we do not need to decide whether it was Chaparro's speed or the troopers' use of their vehicles that caused the accident because the accident was also *temporally* and *physically* attenuated from DPS's use of their vehicles. In *Teage v. City of Dallas*, a passenger was injured when the driver, attempting to evade law enforcement, was involved in an accident. The Dallas court noted that at the time of the collision, the law enforcement vehicles were about 70 yards away, they were not blocking the suspect's use of any roads, they did not attempt to physically stop the suspect by running his vehicle off the road, pulling up beside it, or bumping it. *Teague v. City of Dallas*, 344 S.W.3d 434, 436, 439 (Tex. App.—Dallas 2011, pet. denied). The court held that "the County's and the City's operation of their vehicles was too physically and temporally separated from [the fleeing suspect]'s conduct to constitute a cause of Teague's injuries." *Id*. at 439; *see also City of Pharr v. Herrera*, No. 13–15–00133–CV, 2017 WL 929483, at *3 (Tex. App.—Corpus Christi–Edinburg Mar. 9, 2017, no pet.) (mem. op.) (holding that there was no causal nexus between initiating a pursuit of a suspect and a collision when the officer was no longer pursuing him and not present when the accident happened).

Here, at the time of the accident, none of the troopers were near Chaparro. They all stated in their affidavits that they were too far behind Chaparro to witness the collision. Coleman, the trooper closest to Chaparro at the time of the collision, stated that he arrived on the scene about ten seconds after the accident. These statements are confirmed by dash camera videos, all of which

show that when they arrived, the accident had already happened, and other law enforcement agencies were already on the scene.

We hold that DPS troopers' use of vehicles was too attenuated from Chaparro's conduct to be a cause of the accident. Therefore, immunity was not waived under § 101.021. DPS's third issue is sustained.

### (3) Official immunity

Even if there were a causal nexus between the use of DPS vehicles and the accident, immunity would not be waived for another reason. Immunity from suits based on the use of a motor-driven vehicle is only waived if the government "employee would be personally liable." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1)(B). A government employee is not personally liable if official immunity applies. In other words, "the governmental employer's immunity is not waived if its employee is protected by official immunity." *City of Houston v. Rodriguez*, 704 S.W.3d 462, 468 (Tex. 2024); *DeWitt v. Harris Co.*, 904 S.W.2d 650, 653 (Tex. 1995) ("If the employee is protected from liability by official immunity, the employee is not personally liable to the claimant and the government retains its sovereign immunity.").

"[O]fficial immunity protects governmental employees only when they are performing (1) discretionary duties, (2) in good faith, and (3) within the scope of their authority." *City of Houston v. Sauls*, 690 S.W.3d 60, 70 (Tex. 2024). "The doctrine promotes the public good by encouraging energetic law enforcement and allowing officers to make good-faith, split-second judgments based on their experience and training without fear of liability for every mistake." *Rodriguez*, 704 S.W.3d at 468.

As a matter of law, the troopers were engaged in a discretionary duty. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 655 (Tex. 1994) (the decision to initiate and continue a high-speed pursuit of a criminal suspect "involves the officer's discretion on a number of levels" and is a

8

discretionary act). There is also no question that the troopers were acting within the scope of their authority. Reyes's own petition concedes as much, alleging that the troopers committed negligent acts "while acting in the scope of their employment." The applicability of official immunity in this case turns on whether the troopers acted in good faith.

The standard used to determine good faith is whether "a reasonably prudent officer, under the same or similar circumstances, *could have believed* that the *need* to immediately apprehend the suspect outweighed a clear *risk* of harm to the public in continuing the pursuit." *Sauls*, 690 S.W.3d at 72–73 (emphasis in original) (quoting *Chambers*, 883 S.W.2d at 656). To show good faith, government employees must show that they assessed the needs and risks of the pursuit. As the Texas Supreme Court recently explained:

> The "need" factors include the seriousness of the crime to which the officer is responding, the necessity of the officer's immediate presence to prevent injury or loss of life or to apprehend a suspect, and the availability of any alternative courses of action to achieve a comparable result. The "risk" factors address the nature, severity, and likelihood of any harm that the officer's actions could cause and whether such risk would be clear to a reasonably prudent officer. . . . [T]his standard "does not place an onerous burden on law enforcement" because the touchstone is "what a reasonable officer *could have believed*" under the circumstances.

*Rodriguez*, 704 S.W.3d 462 at 472.

### (a)   Need to pursue Chaparro

In his affidavit, Patlan testified about the general need to apprehend human smugglers because of "the significant possibility of injury and death to the smuggled individuals who are at risk for assault and abuse . . ., who may be forced into forced labor or criminal activity including prostitution . . ., and whose families may be extorted for ransom demands." In addition to the need created by Chaparro's suspected crime, the troopers also properly evaluated the need created by Chaparro's dangerous driving while being pursued. *Rodriguez*, 704 S.W.3d at 473 (considering not only the suspected offenses for which the suspect was being pursued, but also his reckless driving during that pursuit); *see also Tex. Dep't of Pub. Safety v. Johnson*, No. 01-20-00397-CV,

2022 WL 3452264, at *7 (Tex. App.—Houston [1st Dist.] Aug. 18, 2022, no pet.) (mem. op.); *Harris Cnty. v. Avila*, No. 14-18-00182-CV, 2019 WL 1030332, at *5 (Tex. App.—Houston [14th Dist.] Mar. 5, 2019, no pet.) (mem. op.).

Booth-Hernandez stated that she pursued Chaparro because:

The downtown area of the city of Eagle Pass was in the direction the suspect was heading and I was concerned that a school located in the area of US 277 would be releasing its students about that time of day, creating a dangerous situation for the public if the suspect vehicle was not stopped or slowed immediately.

Similarly, Patlan recounted that he "decided to pursue the vehicle because a driver who is speeding down a major thoroughfare and driving erratically could cause accidents which increase the potential of harm to citizens of the city." And Coleman stated that he decided to join the pursuit because of "the need to slow or stop a speeding motorist who was evading law enforcement and driving erratically at [a] high rate of speed towards populated downtown Eagle Pass[.]"

### (b) Risks

The risks of high-speed pursuits are obvious and do not need to be expressly identified in affidavits or other evidence. *Rodriguez*, 704 S.W.3d at 473. But other factors included in assessing the risks are the "facts and circumstances that affected the risks," such as the road and weather conditions and the officer's efforts to mitigate those risks. *Id.* (quoting *Sauls*, 690 S.W. 3d at 75); *Johnson*, 2022 WL 3452264, at *7 (discussing trooper's affidavit testimony that he considered that the roads were dry, visibility was good, and that he used his lights and siren); *Avila*, 2019 WL 1030332, at *5 ("The deputy was 'very familiar' with the major thoroughfare where the collision occurred. The weather was clear, the roads were well-lit, and traffic congestion was moderate to light. Also, the deputy had activated his emergency lights and siren, and other vehicles had pulled over to allow for the deputy's safe travel.")

The troopers testified by affidavit about their consideration of various factors in deciding to pursue Chaparro, such as:

10

- "The traffic in the area was still relatively light, and the road was still straight and flat, there was a significant law enforcement presence in the area which alerted the public to the emergency."

- "It continued to be a clear day and the roadway was dry."

- They activated and maintained their emergency lights and sirens throughout the chase.

- They slowed their speed through intersection.

In addition to evidence that the troopers weighed the needs and risks of pursuing Chaparro, DPS also submitted the affidavit of Tamez who reviewed the conduct of Patlan and concluded that "a reasonable and prudent officer, under the same or similar circumstances as Trooper Patlan, could have believed that his conduct was justified[.]" The affidavits and videos submitted by DPS satisfied their burden of showing that the troopers assessed the needs and risks of the pursuit and acted in good faith.

The burden then shifted to Reyes who had an elevated standard of proof. *Rodriguez*, 704 S.W.3d at 474. To rebut a showing of an officer's good faith for official immunity purposes, it is not sufficient to show that a reasonable officer could have come to a different conclusion; the plaintiff must show that "*no* reasonably prudent officer in the defendant's position could have thought the facts were such that they justified defendant's acts." *Id.* (cleaned up). "This burden may be satisfied by presenting expert or other testimony that balances both the need and risk factors described above to conclude that no reasonably prudent officer could have believed the actions were justified." *Johnson*, 2022 WL 3452264, at *5 (citing *City of San Antonio v. Ytuarte*, 229 S.W.3d 318, 321 (Tex. 2007). Reyes offered no evidence to meet this burden.[5]

Because the officers could not be personally liable for their conduct, DPS's immunity was not waived under § 101.021(1)(B). DPS's third issue is sustained.

---

[5] On appeal, Reyes does not make any argument that the troopers did not have official immunity or act in good faith.

11

## C. Emergency exception to the waiver of immunity

From the broad categories of cases for which the Legislature has waived immunity, the Legislature also crafted exceptions for certain situations in which immunity is retained. In this case, DPS argues that even if immunity were waived under § 101.021, the emergency exception to that waiver applies. We agree.

> Under the emergency exception, a waiver of immunity does not apply to a claim arising:

> from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others[.]

Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2).

The policy behind the emergency exception is "to balance the safety of the public with the need for prompt responses to police, fire, and medical emergencies." *City of Amarillo v. Martin*, 971 S.W.2d 426, 429 (Tex. 1998) "Imposing liability for a mere failure in judgment could deter emergency-assistance personnel from acting decisively and taking calculated risks" in order to save life or property. *City of Houston v. Frazier*, No. 01-21-00318-CV, 2022 WL 1216181, at *8 (Tex. App.—Houston [1st Dist.] Apr. 26, 2022, no pet.) (mem. op.) (citing *Martin*, 971 S.W.2d at 429). Immunity prevents "judicial second guessing of the split-second and time-pressured decisions' emergency-assistance personnel are forced to make." *City of San Antonio v. Trevino*, No. 04-22-00224-CV, 2022 WL 17480550, at *3 (Tex. App.—San Antonio Dec. 7, 2022, no pet.) (mem. op.) (citing *City of San Angelo Fire Dep't v. Hudson*, 179 S.W.3d 695, 699 (Tex. App.—Austin 2005, no pet.) (mem. op.)).

"The plaintiff bears the burden of negating Section 101.055's applicability." *Maspero*, 640 S.W.3d at 529 , (citing *City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 (Tex. 2006)); *City of San Antonio v. Rosenbaum*, No. 04-11-00498-CV, 2011 WL 6739583, at *2 (Tex. App.—San Antonio Dec. 21, 2011, no pet.) (mem. op.) (stating that once the City raised the issue, the plaintiffs

"would be required to present some evidence showing that [the firefighter] was not reacting to an emergency situation or responding to a 9–1–1 emergency call."). Reyes does not dispute that DPS troopers were responding to an emergency call and she does not allege that they violated any laws or ordinances.[6] The applicability of the emergency exception in this case comes down to whether the DPS troopers acted "with conscious indifference or reckless disregard for the safety of others." The Texas Supreme Court has assumed that this standard is the same as the one required to show recklessness. *Powell*, 704 S.W.3d at 449.

Reyes did not produce any evidence in response to the plea to the jurisdiction. Instead, she argues that DPS's own evidence establishes the troopers' recklessness because they recognized that if Chaparro entered the city limits driving as he was, it would "increas[e] the threat of significant injury to innocent third-parties." But engaging in risky conduct is not by itself enough to show recklessness. "*[A]ll* high-speed car chases involve obvious risk of serious injury to bystanders. Yet, [courts] have long recognized that fleeing suspects may pose an even greater danger to the community." *Maspero*, 640 S.W.3d 531–32 (citing *Travis v. City of Mesquite*, 830 S.W.2d 94, 99 (Tex. 1992)). As both the Texas and United Supreme Court have reasoned, "[W]e are loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive *so recklessly* that they put other people's lives in danger . . . . Every fleeing motorist would know that escape is within his grasp, if only he accelerates to 90 miles per hour, crosses the double-yellow line a few times, and runs a few red lights.") *Maspero*, 640 S.W.3d at 532 (quoting *Scott v. Harris*, 550 U.S. 372, 385 (2007). To meet her burden, Reyes had to show that not only

---

[6] Indeed, the law specifically permits operators of emergency vehicles to violate certain traffic laws when responding to an emergency call. *See, e.g.* Tex. Transp. Code Ann. §§ 546.001, .002. The only law that we find that is implicated in this case is the requirement that the driver of an emergency vehicle drive "with appropriate regard for the safety of all persons." Tex. Transp. Code Ann. § 546.005. The analysis of whether the troopers violated this law is essentially the same as the third element of the emergency exception—whether the troopers acted "with conscious indifference or reckless disregard." *City of San Antonio v. Maspero*, 640 S.W.3d 523, 529 (Tex. 2022).

did the troopers know that there was a risk to others, but that they did not care. *City of Houston v. Green*, 672 S.W.3d 27, 30 (Tex. 2023); *Hartman*, 201 S.W.3d at 672 & n.19.

A "key indicator" that an officer was not reckless is if he engaged in risk assessment. *Powell*, 704 S.W. 3d at 457. Risk assessment is therefore a critical factor in deciding both whether an officer acted in *good faith* for the purposes of *official immunity* and deciding whether he was *reckless* for the purposes of the *emergency exception*. *Id*. Because the troopers evaluated the needs and risks of pursuing Chaparro, as discussed above, we hold that DPS established that the troopers did not act recklessly.

Even if this case fits within the waiver of immunity for injuries caused by the use of motor-driven vehicles, the emergency exception to the waiver applies. We sustain DPS's first issue.

Because of our holding that DPS is immune from this suit in its entirety, we do not reach DPS's fifth issue regarding immunity from claims for exemplary damages.

### D. Request to Defer Ruling

In her response to the plea to the jurisdiction, Reyes requested that the trial court defer its ruling to allow for jurisdictional discovery. Reyes argues that the trial court properly denied DPS's plea to the jurisdiction for a reason not addressed in DPS's brief—because discovery was not yet complete and the plea was therefore premature. The trial court, however, did not grant Reyes's request. Instead, it ruled on the plea to the jurisdiction without providing additional time for discovery.[7] Reyes has not filed a notice of appeal and therefore has failed to preserve her right to challenge the trial court's denial of her request to defer its ruling. Tex. R. App. P. 25.1(c) (requiring a party desiring to alter a trial court's judgment to file its own notice of appeal); *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 737–38 (Tex. 2001) (holding that parties that prevailed in the

---

[7] In contrast, the trial court expressly granted Reyes's request to defer the ruling on the plea to the jurisdiction filed by the City of Eagle Pass and reset the hearing on its plea to the jurisdiction until after their discovery responses would be due.

trial court did not preserve their right to argue a different limitations period because they did not file their own notice of appeal).

## III. CONCLUSION

While Reyes and her son were innocent parties, we hold that sovereign immunity protects the government from their claims. As the Texas Supreme Court has recently recognized, "perhaps [there should be] some other system allowing recovery—even if only to a highly circumscribed degree—for those without fault who are injured as a result of emergency responses." *Powell*, 704 S.W. 3d at 462. But such a change to the long-established jurisprudence of immunity can only be made by the Legislature not the courts.

We reverse the judgment of the trial court and dismiss Reyes's claims against DPS.


MARIA SALAS MENDOZA, Chief Justice

September 16, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.