**Opinion issued May 5, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00569-CV

———————————

**SHAWN WILLIAMS, SR. AND PLESHETTE WILLIAMS, INDIVIDUALLY, AND AS REPRESENTATIVES OF THE ESTATE OF SHAWN WILLIAMS, JR., JOE HOLLINGSHEAD, SHAY HOLLINGSHEAD, AND MARLENE HAWKINSON, Appellants**

**V.**

**THE CITY OF BAYTOWN, Appellee**

---

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Cause No. 2013-06741**

---

## O P I N I O N

This case arises from a collision involving two suspected shoplifters who, while evading arrest, crashed into a car that stood stopped at a red light. Minutes

before the collision, the shoplifting suspects had rammed a parked police car in a parking lot to avoid a police blockade. During the ensuing chase, the suspect driver proceeded on Garth Road in the City of Baytown at high speeds, weaving in and out of traffic. Responding Baytown police officers followed at slower speeds behind the suspects. Intending to intercept the suspects, another responding officer placed a spike strip, or tire deflation device, on the roadbed. One of the suspects' truck tires ran over the spike strip. The truck continued approximately 200 feet farther, until the suspect driver rear-ended the car stopped at the red light. A teenaged occupant in the car died, and the teenaged driver was seriously injured.

The surviving driver's father, on behalf of his minor child, together with the deceased passenger's parents, on behalf of his estate, sued the City of Baytown, alleging that its police officers' negligence proximately caused the collision. Baytown filed a jurisdictional plea and a motion for summary judgment, responding that Baytown is immune from liability because (1) no government vehicle or property was involved in the crash and thus liability is not waived under the Texas Tort Claims Act; and (2) even if liability under the Act was waived, the officers' conduct was not reckless; thus, Baytown falls within an emergency exception to the Act's waiver of liability and, in addition, the City may derivatively rely on the officers' official immunity for their good-faith acts in the course of their employment. The trial court ruled in favor of Baytown.

The plaintiffs appeal, contending that they have demonstrated that Baytown is not entitled to immunity, or that fact issues exist precluding such a determination as a matter of law. The plaintiffs contend, first, that Baytown's immunity is waived under the Texas Tort Claims Act because the Baytown officers operated motor vehicles and deployed tangible personal property during the car chase and these acts ultimately resulted in the suspects' collision with the bystanders, meeting the test for a Tort Claims Act waiver. Second, the plaintiffs contend that they have raised a fact issue as to the recklessness of the Baytown officers' actions in failing to apprehend the suspects before they drove away from the shopping center and in placing the spike strip on the roadway, thus overcoming the emergency exception to a waiver of immunity and raising a fact issue as to whether the officers are entitled to official immunity.

We agree with the trial court that the plaintiffs' claims against the Baytown are barred by governmental immunity, and the waiver of immunity under the Tort Claims Act does not apply in these circumstances. We therefore affirm.

## Background

### The chase and collision

On a Friday night in October 2012, Baytown police officers received a call that two individuals, later identified as Shannon Chauncey and Jennifer Jenkins, were shoplifting from a Sears store. Chauncey and Jenkins then drove into a

nearby Academy store parking lot. Special operations police officers converged on the Academy parking lot to observe the suspects. Chauncey left the Academy store and drove his Ford F-150 truck to the front of the store to await Jenkins, who was inside the store. The officers obtained information that the truck was registered to Chauncey, who had a criminal history. Dispatch radioed that Chauncey had "been handled . . .for theft . . .possession several times. . .and assault bodily injury." The Baytown officers decided to use unmarked police cars to "box-in" or block the suspects' truck, thus containing them in the parking lot.

Jenkins exited the store without paying for several items. She joined Chauncey in his truck. As the officers had planned, they then boxed–in the truck with their unmarked cars. Although the officers' cars were unmarked, the officers were dressed in identifying uniforms that became noticeable when they exited their vehicles to make an arrest. Upon seeing the officers exit their cars, Chauncey rammed one end of one police car, undeterred. Having successfully evaded the police roadblock, he sped out of the Academy parking lot, jumping over a ditch.

Other Baytown officers in marked police cars had been monitoring the situation via radio in a nearby parking lot. Upon realizing that Chauncey had hit a police vehicle and escaped the Academy parking lot, these officers activated their sirens and lights and chased Chauncey's truck southbound on Garth Road. Officer Johnson led the chase, followed by Officers Filyaw and Anderson. Chauncey's

4

vehicle reached speeds of 90 miles per hour, and the pursuing officers fell back. Chauncey ran red lights and drove recklessly, swerving in and out of traffic. Officer Johnson attempted to keep Chauncey in sight. Chauncey continued his reckless driving for about a couple of miles. Johnson's car was about 10 seconds behind Chauncey when the accident occurred.

Officer Loyd, who was not a part of the pursuit, heard over the radio that the suspects were fleeing at high speeds and driving recklessly. Loyd activated his lights and siren and proceeded toward the fleeing truck from the opposite direction. He parked his police car on Garth Road, ahead of the intersection at Rollingbrook Drive and Garth Road. Garth Road is two lanes in each direction, with a middle left turn lane. The roadway was clear of oncoming traffic, but Loyd noticed that cars were stopped at the intersection.

Loyd announced over the radio that he was going to place a spike strip on the southbound roadbed. He instructed the pursuing officers to continue to stay back. Loyd walked into the roadway. He placed a spike strip in the turning lane of Garth Road, approximately 197 feet away from the intersection at Rollingbrook Drive and Garth Road.

Shay Hollingshead and Shawn Williams, Jr., who were 17 and 16 years old respectively, were among those stopped at the light, in Shay's Ford Focus. They were stopped in the left turn lane. Almost immediately after Loyd deployed the

spike strips, Chauncey's vehicle partially drove over it, puncturing one tire. Although one tire was punctured, Chauncey did not stop driving. Instead, he hit the rear of the Focus at a speed of over 70 miles per hour, pushing it through the intersection. The Focus burst into flames. Williams died at the scene. Hollingshead, the driver, sustained severe injuries. Chauncey and Jenkins fled the scene on foot, but police apprehended them.

*Baytown Police policies*

The Baytown Police Department has a general order regarding emergency driving and pursuit procedures. The order provides:

A. An Officer's duty to avoid damage or injury to innocent third parties takes precedence over pursuit or emergency response. No Officer shall engage in negligent or reckless actions, even in pursuit of actual or suspected violators or in response to emergencies, which may damage or injure innocent persons. An officer may be held liable for the consequences of his reckless disregard for the safety of others.

B. Officers shall balance the need for pursuit and apprehension against the probability and severity of damages or injury. The Officer shall consider the seriousness of the offense which the evader or reckless evader committed.

C. Officers shall not engage in pursuit when it reasonably appears that the potential harm to the persons or property arising from such pursuit outweighs the potential harm threatened by the escaping offender. In the absence of an outweighing danger to persons or property, a peace officer shall not engage in pursuit whenever it reasonably appears that apprehension of the escaping offender by other means is likely.

Particular to the deployment of tire deflation devices, or "TDDs," section 9 of the order provides: "Officers who are driving units equipped with tire deflation devices (TDD) and who have received training in the deployment of these devices may proceed to a location likely to be in the path of the pursuit. These trained and equipped officers have the authority to deploy the TDD at their own discretion within the parameters of this policy, unless otherwise directed by a duty supervisor." Loyd was a trained and equipped tire deflation device officer, although this was the second time he deployed one outside of a training environment.

*Course of proceedings*

Shawn Williams's parents, Pleshette Williams and Shawn Williams, Sr., individually and as representatives of his estate; and Joe Hollingshead, individually and as next friend of Shay Hollingshead, a minor, sued the City of Baytown. Baytown answered, named Shannon Chauncey as a responsible third party, and filed a plea to the jurisdiction. In its plea and motion for summary judgment, Baytown asserted that governmental immunity bars any suit against it. Both sides offered documentary evidence, testimony, and expert reports in connection with the plea and motion. After a hearing, the trial court granted Baytown's plea and an accompanying motion for summary judgment.

## Discussion

### I.  Standard of Review

We review a trial court's ruling on a plea to the jurisdiction de novo. *State v. Holland,* 221 S.W.3d 639, 642 (Tex. 2007); *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex. 2004). "In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). The plaintiff must allege facts that affirmatively establish the trial court's subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993); *City of Pasadena v. Kuhn,* 260 S.W.3d 93, 95 (Tex. App.—Houston [1st Dist.] 2008, no pet.). In determining whether this burden has been satisfied, we must construe the pleadings liberally in the claimants' favor and deny the plea if the claimant has alleged facts affirmatively demonstrating jurisdiction to hear the case. *Miranda,* 133 S.W.3d at 226; *Smith v. Galveston Cnty.,* 326 S.W.3d 695, 697–98 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

If, however, the governmental entity challenges the plaintiff's jurisdictional allegations, then the plaintiff must adduce some evidence to support jurisdiction. *Miranda,* 133 S.W.3d at 227–28. In such a case, the trial court then considers the relevant evidence submitted by the parties. *Id.* at 227. When the relevant evidence

is undisputed or fails to raise a fact question on the issue of jurisdiction, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. If, however, the evidence creates a fact question regarding jurisdiction, then the trial court must deny the plea, and the fact issue will be resolved by the fact finder. *Id.* at 227–28. In reviewing the evidence presented we indulge every reasonable inference in the plaintiff's favor. *Id.* at 228.

## II. Applicable Law

*Governmental immunity*

Under the doctrine of governmental immunity, political subdivisions of the State, including municipalities like Baytown, cannot be held liable for the actions of their employees unless the municipality's common-law immunity is waived by the Texas Tort Claims Act. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 658 (Tex. 1994). In the Tort Claims Act, the Texas Legislature expressly has waived the blanket of governmental immunity in limited circumstances. *Dallas Cnty. Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339, 342–43 (Tex. 1998). Section 101.021 of the Act provides:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
> (B) the employee would be personally liable to the claimant according to Texas law; and
>
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (West 2013). The Act also provides exceptions to its granting of a waiver of immunity, including an exception for a claim arising

> from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others.

*Id.* § 101.055(2).

*Official immunity*

Official immunity is an affirmative defense urged by, or on behalf of, a government employee who is sued for conduct occurring within the scope of his employment. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 465–66 (Tex. 1997) (citing *Chambers*, 883 S.W.2d at 653). Because the Tort Claims Act provides that a government is liable when its employee is liable, whether the government employee is entitled to official immunity affects whether the Act's limited waiver of governmental immunity applies to a governmental unit when the employee's

10

conduct is under scrutiny. *DeWitt v. Harris Cnty.,* 904 S.W.2d 650, 654 (Tex. 1995). Under section 101.021(1) of the Tort Claims Act, "[i]f the employee is protected from liability by official immunity, the employee is not personally liable to the claimant and the government retains its sovereign immunity. . . ." *Id.* at 653 (citing *K.D.F. v. Rex,* 878 S.W.2d 589, 597 (Tex. 1994), *and City of Houston v. Kilburn,* 849 S.W.2d 810, 812 (Tex. 1993)). Additionally, under section 101.021(2), a governmental entity is not liable for the negligence of its employee if the employee has official immunity. *Id.* at 654. A governmental employee is immune from liability for the performance of discretionary duties within the scope of the employee's authority, provided the employee acts in good faith. *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000).

*Basis for plea of immunity in this case*

In its plea, Baytown asserted that it was immune because its officers' alleged negligent conduct does not fall within the Tort Claims Act's limited waiver of immunity, or if it does, the emergency exception to the waiver applies, and the conduct alleged was not reckless as a matter of law. It further claimed that it also established the good faith of its officers as a matter of law, thus establishing official immunity, on which it derivatively relies to establish its immunity under the Act. Either a failure to demonstrate a waiver of immunity or conclusive proof of the officers' good faith supports the trial court's ruling sustaining the

11

jurisdictional plea. *See Miranda*, 133 S.W.3d at 228; *Whitley*, 104 S.W.3d at 542. We first address whether the plaintiffs' case falls within the Tort Claims Act's waiver of immunity, a threshold requirement to imposing liability on Baytown in a wrongful death and personal injury lawsuit.

## III.    Waiver Under the Texas Tort Claims Act

The plaintiffs have pleaded two theories of negligence that they contend bring this case within the Tort Claims Act's waiver for the negligent acts of government employees.    First, the plaintiffs claim that the police officers negligently operated their motor-driven vehicles, proximately causing the plaintiffs' injuries.  Second, the plaintiffs claim that Officer Loyd misused tangible personal property when he deployed the spike strip; the resulting tire puncture, they allege, caused Chauncey to crash his truck into the Focus because it hampered any effort to engage in an evasive maneuver.  In other words, the plaintiffs contend that Chauncey could have avoided or lessened the severity of the crash had one of his tires not been punctured by the deflation device or had the chase not occurred at all. We consider these two contentions in turn.

### A. Waiver by Operation of a Motor-Driven Vehicle

The Tort Claims Act provides a limited waiver of sovereign immunity from suit against a government unit if its employee, while negligently operating a motor-driven vehicle within the scope of his employment, proximately causes personal

injuries or death.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1); *See Tex. Dep't of Crim. Justice v. Miller,* 51 S.W.3d 583, 587 (Tex. 2001) ("The Tort Claims Act provides a limited waiver of sovereign immunity . . . .").  To demonstrate a waiver under this provision, a plaintiff must show a nexus between the employee's use of the vehicle and the injuries sustained.  *Whitley*, 104 S.W.3d at 542–43.  A causal nexus means that "the [vehicle]'s use must have actually caused the injury."  *Id.* at 543 (quoting *Tex. Natural Res. Conservation Comm'n v. White,* 46 S.W.3d 864, 869 (Tex. 2001) (citing *Bossley,* 968 S.W.2d at 342–43)).  The operation or use of a motor vehicle "does not cause injury if it does no more than furnish the condition that makes the injury possible."  *Id.* (citing *Bossley,* 968 S.W.2d at 343).  "In other words, even where the plaintiff has alleged a tort on the part of a government driver, there is no immunity waiver absent the negligent or otherwise improper use of a motor-driven vehicle."  *Ryder Integrated Logistics v. Fayette Cnty.,* 453 S.W.3d. 922, 928 (Tex. 2015) (per curiam).

Baytown observes that its responding officers were not involved in the collision; thus, it contends, no operation of a Baytown vehicle caused the plaintiffs' injuries and its immunity is not waived under this part of the Tort Claims Act.  The plaintiffs respond that Baytown's officers were negligent while using their vehicles in the foiled attempt to box-in the suspects' truck, and this use

13

was a proximate cause of the collision.[1]  We examine the relevant case authorities in light of the parties' arguments.

In *Whitley*, the Texas Supreme Court considered whether a plaintiff could sue a local transit authority for injuries that he had sustained during an altercation with a fellow passenger.  104 S.W.3d at 541.  The bus driver had required the plaintiff to exit the bus in the vicinity of the passenger who had assaulted the plaintiff.  *Id.*  The Texas Supreme Court concluded that immunity was not waived under the Tort Claims Act because the bus passenger's injuries did not arise from the government driver's operation of the bus.  *Id.* at 542–43.

The courts of appeals have employed similar reasoning in connection with police chases in which a police vehicle is not a part of the collision.  In *Teague v. City of Dallas*, the Dallas Court of Appeals rejected a waiver of immunity when a plaintiff sued for personal injuries sustained in a crash that occurred after a suspect refused to obey a police officer's directive to stop.  344 S.W.3d 434, 436 (Tex. App.—Dallas 2011, pet. denied).  During the course of the subsequent police chase, the suspect crossed over a center island curb and collided with a responding officer's patrol car.  *Id.*  The Dallas Court of Appeals held that the undisputed facts

---

[1]     Baytown replies that the plaintiffs waived this contention by failing to brief it.  We disagree.   The plaintiffs' opening brief noted that "[t]he district court was clearly concerned by the fact that Chauncey's vehicle—and not Baytown property—crashed into Appellants. That concern should be ignored."   The plaintiffs cited legal authority in support of this argument. *See* TEX. R. APP. P. 38.1.

did not demonstrate a causal nexus between the police detention and chase and the subsequent crash because the responding vehicle was not involved in the chase; it was the suspect driver's decision to cross the median that caused the collision. *Id.* at 439.

The Dallas Court of Appeals similarly rejected a Tort Claims Act Waiver in *City of Dallas v. Hillis*. 308 S.W.3d 526, 532 (Tex. App.—Dallas 2010, pet. denied). In *Hillis*, the plaintiffs contended that the city's police officers were negligent in "initiating and continuing a high-speed chase contrary to the no-chase policy of the Dallas Police Department." *Id.* Relying on *Whitley,* the *Hillis* court rejected the notion that immunity was waived simply because a collision took place in the context of a police chase because "[t]he causal nexus is not satisfied by the mere involvement of a vehicle, nor by an operation or use that 'does no more than furnish the condition that makes the injury possible.'" *Id.* (quoting *Whitley*, 104 S.W.3d at 543)*.* The court of appeals observed: "[w]hen an alleged cause is geographically, temporally, or causally attenuated from the alleged effect, that attenuation will tend to show that the alleged cause did no more than furnish the condition that made the effect possible." *Id.*

The San Antonio Court of Appeals followed the *Hillis* court's reasoning in *Lopez v. Escobar.* No. 04-13-00151-CV, 2013 WL 4679062, at *5 (Tex. App.—San Antonio Aug. 28, 2013, no pet.) (mem. op.). In *Lopez,* police officers signaled

a truck to stop in a highway median, but the truck driver instead darted into oncoming traffic and collided with Escobar, the plaintiff. *Id.* at *2. In holding that the accident did not arise from the officer's operation or use of a motor vehicle, the San Antonio Court of Appeals held that "pursuing" the truck driver into the median did not proximately cause Escobar's injuries. *Id.* at *6. Rather, the suspect driver caused them. *Id.* The court of appeals contrasted another appellate case in which the officer had interfered with traffic to cause the accident. *See id.* at *4 (citing *Saramanee v. Town of Northlake,* No. 02-10-00152-CV, 2011 WL 944908, at *5 (Tex. App.—Fort Worth, March 17, 2011, pet. denied) (mem. op.).

Both Houston Courts as well have declined to find waivers under the Tort Claims Act in cases in which the government vehicle was not involved in causing the injuries made the basis of the suit. In *Townsend v. City of Alvin*, the our sister court rejected the plaintiffs' contention that a police officer exercised control over a speeding individual's vehicle when the officer instructed the individual to drive straight home after a traffic stop, even though the officer knew the driver did not possess a driver's license. No. 14-05-00915-CV, 2006 WL 2345922, at *1 (Tex. App.—Houston [14th Dist.] Aug. 15, 2006, no pet.) (mem. op.). In that case, the suspect driver ran a red light and killed another driver on the road a few minutes after the police encounter. *Id.* The court observed that the facts alleged did not

establish a waiver of immunity because the police officer did not control the suspect's car at the time of the accident. *Id.* at *3–4.

Finally, in *City of Sugarland v. Ballard*, we considered a wrongful death case in which the plaintiffs alleged that the police failed to properly secure the decedent in a patrol car. 174 S.W.3d 259, 262 (Tex. App.—Houston [1st Dist.] 2005, no pet.). The decedent escaped the car on foot and died in an auto-pedestrian accident with an oncoming car. *Id.* Our court held the death did not arise from the car's operation. *Id.* at 266. We reasoned that the cause of the death was the decedent's "decision to flee into freeway traffic." *Id.* The failure to secure the decedent merely furnished the condition that made it possible for him to escape. *Id.*

In reviewing a number of these intermediate appellate cases, the Texas Supreme Court recently held that a plaintiff sufficiently alleged that an injury arose from an officer's use of a vehicle and that the vehicle's use was a proximate cause of an accident for the purposes of the Tort Claims Act when a police officer, who was allegedly approached oncoming traffic using activated overhead lights, headlights, and a high-beam spotlight, blinded an oncoming driver. *Ryder,* 453 S.W.3d. at 926, 929, 931. In *Ryder,* the Texas Supreme Court cited *Hillis* decision with approval. *Id.* at 929–30. But in distinguishing that case, the Court reasoned that the police officer driver in *Ryder*, by blinding oncoming traffic, did more than

furnish a condition that later caused an accident; instead, he was alleged to be a co-tortfeasor, whose faulty driving was directly implicated as a cause of the accident. *Id.* at 928–30; *see also Travis v. City of Mesquite*, 830 S.W.2d 94, 96, 99 (Tex. 1992) (holding that summary-judgment evidence was sufficient to raise a fact issue as to cause in fact where suspect driver and chasing police officers all entered one-way access road going the wrong direction and suspect driver crashed head-on into plaintiffs' car, and defense counsel had conceded that "fact issues remain.").

Applying the reasoning in *Ryder* and the cases discussed within it, we conclude that the plaintiffs here have failed to show a waiver of immunity through the operation of a police vehicle. The plaintiffs concede that no police car was directly involved in the collision—no officer blinded oncoming traffic or entered a freeway access road the wrong way during the chase. The plaintiffs suggest, however, that the police officers' unsuccessful box–in maneuver outside the Academy store was a negligent use of their vehicles, one that allowed Chauncey to access his vehicle, which he ultimately used as a dangerous weapon.

To establish a Tort Claims Act waiver, however, it is not sufficient that the officers used their patrol cars to execute an unsuccessful box-in maneuver; rather, their use of the vehicles must be an actual cause of the injury. *See Ryder,* 453 S.W.3d at 929–30; *Whitley*, 104 S.W.3d at 542–43 (holding that government driver's failure to supervise the public, not the use of the bus, caused passenger's

18

injury, and thus conduct did not fall within waiver of immunity); *Hillis*, 308 S.W.3d at 535 ("[officer's] use of his patrol car was too attenuated from [fleeing individual's] conduct for that use to constitute a cause of [the individual's] injuries"); *Ballard*, 174 S.W.3d at 266 (no nexus with use of car, given suspect's decision to flee into oncoming traffic); *Townsend*, 2006 WL 2345922, at *1 (no waiver for failing to control speeding driver later involved in a collision). We hold that the officers' failure to control Chauncey's actions in the Academy parking lot does not furnish a sufficient nexus between a government employee's operation of a motor vehicle and the injuries that occurred. *Compare Hillis*, 308 S.W.3d at 535 (alleged negligent conduct too attenuated from accident to be a cause of plaintiff's injuries) *with Ryder,* 453 S.W.3d at 929–30 (police officer allegedly blinded oncoming traffic) *and City of San Antonio v. Johnson*, 103 S.W.3d 639, 642 (Tex. 2003) (police officer allegedly negligently operated his vehicle by making an illegal u-turn, potentially causing the traffic accident).

The plaintiffs further respond by citing several police chase cases in which the courts have analyzed an officer's actions under a good-faith analysis, even when the suspect, and not the officer, causes a collision. *See Clark*, 38 S.W.3d at 579–80 (holding that the officer acted in good faith in his pursuit when sued for injuries caused by suspect's crash); *see also City of San Antonio v. Trevino*, 217 S.W.3d 591, 594, 596 (Tex. App.—San Antonio 2006, no pet.) (holding that

officer acted in good faith as a matter of law); *Conklin v. Garrett*, 179 S.W.3d 676, 684 (Tex. App.—Tyler 2005, no pet.) (holding that officer did not meet summary-judgment burden to show good faith). By reaching the question of the officer's good faith, the plaintiffs argue, these courts implicitly assumed that a waiver of immunity is otherwise always present in high-speed chases, even when the officer's driving was not directly involved in the collision. We disagree. In these cases, the governmental entity did not question whether its employee's use of a motor-driven vehicle or property caused the accident; rather, the government pursued its official immunity defense, which is an alternative basis for rejecting a suit against a government official or his employer. *See Clark,* 38 S.W.3d at 580 (noting that "sovereign immunity shields the governmental employer from vicarious liability" if "official immunity shields a governmental employee from liability"); *Conklin,* 179 S.W. 3d at 679, 684 (identifying official immunity as the "sole issue" on appeal and rejecting officer's good-faith defense as a basis for summary judgment); *Trevino*, 217 S.W.3d at 596 (affirming summary judgment based on official immunity because officer acted in good faith as a matter of law).

Accordingly, we conclude that the decision to try to box-in the fleeing suspects is too attenuated from Chauncey's decision to evade the officers and continue his reckless flight. As a result, the officers' failed strategy was not a proximate cause of the accident.

**B. Waiver by Use of Tangible Personal Property**

The plaintiffs' second theory of negligence is one based on the misuse of tangible personal property; here, Officer Loyd's deployment of the spike strip or tire deflation device. Relying on section 101.021(2) of the Act, the plaintiffs allege that Loyd's spike strip deployment was a negligent use of tangible personal property that caused the plaintiffs' injuries. Baytown responds that the plaintiffs failed to adduce any evidence showing that Officer Loyd's use of a spike strip caused or contributed to the plaintiffs' injuries.

We agree with Baytown's position. Similar to the motor-driven vehicle exception to general immunity, allegations of misuse of tangible personal property require more than involvement of the property; there must be a causal nexus between the misuse of the property and the injuries sustained. *Bossley*, 968 S.W.2d at 342–43. In this case, the plaintiffs did not adduce facts supporting an inference that Officer Loyd's use of the spike strip caused or contributed to the collision. Once Baytown challenged the plaintiffs' jurisdictional allegations of causation, it was incumbent on the plaintiffs to adduce some proof of a causal nexus sufficient to raise material issue of fact. *See Miranda,* 133 S.W.3d at 227–28.

An examination of the evidence adduced in the plea proceeding shows no causal nexus between the spike strip deployment and the plaintiffs' injuries. In

response to Baytown's causation challenge, the plaintiffs proffered an affidavit from Ted Marules, an accident reconstruction specialist. He averred that, typically, a tire traveling over a spike strip will pick up between four to six spikes and deflate in 20–30 seconds, with deflation occurring quickly upon impact and slowing over time. He acknowledged that the tire on Chauncey's truck that traveled over the spike strip did not blow out. But noting that the tire had punctured, he opined that it "was deflated to some degree" during the 1.7 seconds before the collision. He further opined that a partially deflated tire "can affect a driver's ability to control the vehicle." Based on these assumptions, Marules concluded that the spike strip that Officer Loyd placed in the roadway could have affected the vehicle's steering during the estimated travel time from the tire puncture to the crash, and could have been sufficient to alter the truck's course, because "[s]light variations in turning radius will alter the vehicle's direction substantially."

Baytown challenged Marules's affidavit by proffering an affidavit from a collision reconstruction specialist with the Baytown Police Department. Baytown's expert examined Chauncey's vehicle. He observed that the front right tire had traversed the spike strip, collecting four spikes total, with two spikes penetrating far enough to leak air. He averred that tires in this manner deflate gradually without any change in the vehicle's direction. He also conducted a reenactment of the spike strip encounter in a 2009 Ford F-150. He found no

evidence that a similarly positioned spike strip contributed to a loss of steering or braking.

In reviewing the evidence presented in a plea to the jurisdiction case, we take as true all evidence favorable to the plaintiff, indulging every reasonable inference in the plaintiffs' favor. *See Miranda,* 133 S.W.3d at 228. Under the facts adduced, we conclude that Officer Loyd's deployment of spike strips was a use of tangible property under section 101.021(2). Even indulging every reasonable inference in favor of the plaintiffs, however, their expert could not connect his general causation theory—that a tire puncture can affect a driver's ability to control the vehicle—to any specific fact showing that it happened in this case. No witness testified that Chauncey lost control of his truck while steering or in attempting an evasive maneuver.[2] No accident reconstruction expert averred that the physical evidence gathered in the case supports such an inference. At best, the plaintiffs' expert opined that a loss of control could have happened because

---

[2] Officer Johnson's dashcam video was too far away from the events leading to the accident to meaningfully depict it. Baytown did not produce the dashcam video from Officer Loyd's car. Loyd testified that he and another officer attempted to download the video shortly after the accident but that it could not be retrieved. The plaintiffs contend on appeal that we should infer that the video was evidence supporting their theory of causation because its absence hampered their ability to perform a proper accident reconstruction. Absent a trial court ruling finding spoliation of evidence, however, we do not draw such an inference. *See Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 14 (Tex. 2014) ("[T]he trial court must determine, as a question of law, whether a party spoliated evidence. . . ."). No testimony supported an inference that the dashcam would have shown that Chauncey lost control of his truck after traveling over the spike strip; its absence allows no inference either way.

23

Chauncey had avoided hitting other cars at other intersections during the chase. But what happened at other intersections does not tend to show a loss of steering control as a cause of the fatal collision. To constitute a causal nexus, there instead must be some evidence—direct, circumstantial, or expert—that a loss of control in fact happened and that Chauncey in fact had attempted to avoid the crash but was thwarted because his tire was punctured by the strip. *See, e.g. Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581 (Tex. 2006) (upholding trial court's exclusion of expert testimony where proffered expert could testify that fuel system's design could cause hoses to separate, but had no evidence that hoses separated to cause fire in this case). Without this evidence, the officer's deployment of the spike strip cannot be sufficiently linked to the injuries sustained in the collision, a necessary jurisdictional requirement to pursue a claim against Baytown for damages under the Tort Claims Act. *See Miranda,* 133 S.W.3d at 227; *Bossley*, 968 S.W.2d at 342–43. Like the allegations involving motor-driven vehicles, we conclude that the claim involving the misuse of government property does not provide a causal nexus sufficient to raise a fact issue on waiver of immunity from suit and liability.

Because we have concluded that the jurisdictional facts do not show a causal nexus between government vehicles or property and the injuries that occurred that is sufficient to support a finding of waiver of governmental immunity, we hold that governmental immunity has not been waived under either theory of negligence for

which the Tort Claims Act authorizes a waiver. The trial court therefore properly granted Baytown's jurisdictional plea.

## III. Emergency Response and Official Immunity

*Emergency response*

Section 101.055(2) provides that the TTCA does not apply to a claim arising

> from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(2). Baytown argues that its police officers responded to an emergency situation and were not reckless as a matter of law, thus further entitling it to immunity from this suit. The plaintiffs respond that Baytown created its own emergency by failing to apprehend Chauncey and that the continued police pursuit of Chauncey and deployment of a spike strip constituted a reckless disregard for public safety. Because we have concluded that the undisputed jurisdictional facts do not show a causal nexus between government vehicles or property and the injuries that occurred that is sufficient to support a finding of waiver of governmental immunity, we do not reach the question of the applicability of the emergency exception. *See Gipson v. City of Dallas*, 247 S.W.3d 465, 471 (Tex. App.—Dallas 2008, pet. denied) ("We conclude sections 101.055(2) and 101.062(b) are relevant only after the threshold issue of the

25

existence of a waiver of immunity pursuant to section 101.021 is met"); *City of El Paso v. Hernandez*, 16 S.W.3d 409, 416 (Tex. App.—El Paso 2000, pet. denied) ("[W]e hold that the City has sovereign immunity in an action involving a claim related to 9–1–1 emergency service only where governmental immunity is waived under Section 101.021. . . .").

*Official Immunity*

Baytown further responds that the trial court's ruling is correct because Baytown conclusively has demonstrated official immunity as an affirmative defense to the suit. Thus, to prevail on appeal, the plaintiffs must show that some evidence exists that the involved officers failed to act in good faith in deciding a course of action in connection with apprehending the fleeing suspects, in addition to some evidence of a waiver of immunity under the Tort Claims Act under section 101.021.

The parties agree that the officers performed discretionary duties within the course and scope of their employment as police officers when these events transpired. But in the trial court, the parties strongly contested the element of good faith. *See Clark,* 38 S.W.3d at 581 (citing *Chambers*, 883 S.W.2d at 656–57) ("[A] police officer must prove that a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the

pursuit."). Because we have concluded, like the trial court, that the plaintiffs' suit does not meet the requirements for establishing jurisdiction under section 101.021 of the Tort Claims Act, we do not reach Baytown's further jurisdictional challenge based on official immunity.

## Conclusion

We hold that the City of Baytown, as a local government, is immune from the suit brought against it and the Tort Claims Act does not authorize a waiver of that immunity. We therefore affirm the trial court's order granting Baytown's plea to the jurisdiction.

Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.