

# NUMBER 13-24-00585-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CITY OF MISSION,                                             Appellant,

## v.

ENRIQUE MAXIMUS RODRIGUEZ,                      Appellee.

## ON APPEAL FROM THE 139TH DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Peña and West**
**Memorandum Opinion by Justice West**

Appellee Enrique Maximus Rodriguez initiated the underlying lawsuit after a motorist fleeing from appellant City of Mission (the City) police collided with him. The trial court denied the City's plea to the jurisdiction. By three issues, the City argues it is immune because: (1) Rodriguez has not satisfied the required nexus under the general

waiver of governmental immunity, *see* TEX. CIV. PRAC. & REM. CODE § 101.021(1), (2) the emergency exception to the general waiver of governmental immunity shields the City, *see id*. § 101.055(2), and (3) the police officer's actions enjoyed official immunity. We reverse and remand.

## I.   BACKGROUND

Rodriguez pleaded the following:

[1]    On September 21, 2021, Mr. Rodriguez was driving through San Juan, Texas, as he normally does. Unbeknownst to Mr. Rodriguez, Samuel Monjar[a]s, a police officer for the City of Mission, initiated a high-speed chase when he attempted to pull over Samuel Martinez for a license plate light being out. Instead of understanding the extreme degree of danger this chase posed to the public for a simple traffic stop, Officer Monjar[a]s continued the needless chase at reckless and dangerous speeds. Ultimately, Officer Monjar[a]s continued to chase Mr. Martinez down U.S. Business 83 reaching speeds over 60 mph in a 35-mph zone. At some point, Officer Monjar[a]s should have realized that the chase was not worth the unreasonable danger and either slowed down or stopped chasing Mr. Martinez. However, Officer Monjar[a]s, with subjective knowledge of the risk this chase posed to the public, deliberately disregarded that risk and continued the chase.

[2]    At the intersection of Nebraska Avenue and U.S. Business 83, Mr. Rodriguez proceeded through a green light to continue on his trip. When Mr. Rodriguez reached the middle of the intersection, Mr. Martin[]ez while still being chased at a high speed by Officer Monjar[a]s violently collided with Mr. Rodriguez's vehicle. Mr. Rodriguez lost consciousness and woke up over a week later in the hospital. Mr. Rodriguez remained in the hospital for over a month suffering numerous medical procedures and enduring excruciating therapy even learning to walk again. Mr. Rodriguez had no idea that when he proceeded through the green light that he would endure life-altering injuries.[1]

---

[1] Rodriguez also enumerates several duties breached by Officer Monjaras: (a.) Failure to use due caution; (b.) Failure to control speed in violation of Texas Transportation Code section 545.351; (c.) Failure to conduct a police chase in a safe and reasonable manner with due regard to the safety and well-being of the public; (d.) Failure to operate his vehicle in a manner to avoid increasing the police chase to an unreasonably safe speed; (e.) Failure to operate the vehicle with appropriate regard for the safety of all persons in violation of Texas Transportation Code section 546.005; (f.) Operating the vehicle with reckless disregard for the safety of others in violation of Texas Transportation Code section 546.005; (g.) Operating the vehicle with conscious indifference to the safety of others; (h.) Failure to use that degree of care as a

The trial court denied the plea as discussed above, and this appeal ensued.

## II.     STANDARD OF REVIEW & APPLICABLE LAW

Jurisdictional challenges are reviewed de novo. *City of Houston v. Gomez,* 716 S.W.3d 161, 164 (Tex. 2025) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004)). In de novo review, we exercise our own discretion and accord no deference to the trial court's decision. *Vaughn v. Vaughan*, 710 S.W.3d 412, 418 (Tex. App.—Eastland 2025, pet. denied) (citing *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998)). "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Miranda*, 133 S.W.3d 217, 226. "We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Id.* "If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend." *Id.* at 226–27. "If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Id.* at 227.

## III.     GENERAL IMMUNITY WAIVER – CAUSATION

By its first issue, the City argues it enjoys governmental immunity because Rodriguez's injuries as pled did not arise from Officer Monjaras's use or operation of his government vehicle under the general waiver of governmental immunity. *See* TEX. CIV.

---

person of ordinary, reasonable prudence would have used under similar circumstances; and (i.) Additional acts of negligence and reckless disregard to the safety of others as will be identified in discovery.

PRAC. & REM. CODE § 101.021(1). We agree.

## A.     Law & Analysis

Governmental immunity is waived related to

> personal injury . . . proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if . . . the . . . personal injury . . . *arises from* the operation or use of a motor-driven vehicle . . . and . . . the employee would be personally liable to the claimant according to Texas law.

*Id.* (emphasis added). "The phrase 'arises from' requires a nexus between the injury negligently caused by a governmental employee and the operation or use of a motor-driven vehicle or piece of equipment." *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003) (quotation omitted). It requires "more than mere involvement" of a government vehicle. *Id.* "The vehicle's use must have actually caused the injury." *Id.* (citation modified). "[T]he operation or use of a motor vehicle 'does not cause injury if it does no more than furnish the condition that makes the injury possible.'" *Id.* (quoting *Dall. Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998)).

In *Whitley*, a public bus passenger verbally harassed and threatened Whitley, a disabled passenger, with a box cutter. *Id.* at 541. Disturbed by the commotion, the bus driver directed Whitley to exit the bus, and as he exited, the aggressor threatened to kill him. *Id.* at 542. The bus driver then dropped the aggressor off at another stop about two blocks away. *Id.* The aggressor assembled her friends, and they beat Whitley severely. *Id.* The Texas Supreme Court found there was no nexus between Whitley's injury and the government employee's operation of the bus because "[the aggressor] and her accomplices caused Whitley's injuries." *Id.* at 543. And while the "failure to control or

4

supervise the public" may have contributed, "the operation or use of the bus did not." *Id.*

In *City of Dallas v. Hillis*, law enforcement attempted "a routine traffic stop" of a motorcyclist, Hillis. 308 S.W.3d 526, 528–29 (Tex. App.—Dallas 2010, pet. denied). Hillis fled, a police chase reaching speeds of 110 miles per hour ensued, Hillis lost control and fell off an overpass resulting in his death. *Id.* at 529. His estate sued the city, and the appellate court held the city was immune. *Id.* at 535. Specifically, the court concluded as a matter of law that law enforcement's "use of [a] patrol car" in pursuit of Hillis was "too attenuated from Hillis's conduct for that use to constitute a cause of Hillis's injuries." *Id.*

In *Teague v. City of Dallas*, law enforcement attempted to stop a car—for lack of a registration sticker—driven by Aponte and also occupied by Teague. 344 S.W.3d 434, 436 (Tex. App.—Dallas 2011, pet. denied). Aponte failed to stop, and a police chase ensued involving speeds in excess of ninety miles per hour, passing through red lights, and running stop signs. *Id.* Aponte swerved across three lanes of traffic, lost control of his car, and collided with a police cruiser resulting in his death and injuries to Teague. *Id.* Teague sued seeking recovery for her injuries. *Id.* The appellate court found the city was immune because there was no nexus between operation of the cruisers and Teague's injuries. *Id.* at 439. Specifically, "the operation of the [police] vehicles is too attenuated from the injuries" because "the County's and the City's operation of their vehicles was too physically and temporally separated from Aponte's conduct to constitute a cause of Teague's injuries." *Id.*

In *Lopez v. Escobar*, law enforcement sought to conduct a stop of a truck suspected of carrying illegal immigrants. No. 04-13-00151-CV, 2013 WL 4679062, at *2

5

(Tex. App.—San Antonio Aug. 28, 2013, no pet.) (mem. op.). The truck did not initially stop, then stopped in a median separating a divided highway, and then took off again into traffic. *Id.* Escobar was unable to stop before hitting the truck. *Id.* Escobar sued law enforcement. *Id.* The appellate court found law enforcement enjoyed immunity. *Id.* at *6. Specifically, law enforcement's actions "did not actually cause Escobar's injuries." *Id.* The court explained as follows:

> The unknown driver of the truck's decision to try to flee by darting out into traffic caused the injuries. The only connection between the use of the patrol car and Escobar's injuries is that Captain Martinez was attempting to initiate a stop of the vehicle with which Escobar collided. That fact alone is nothing more than mere involvement of the official vehicle and is an insufficient nexus to result in a waiver of immunity.

*Id.*

In *Williams v. City of Baytown*, law enforcement pursued two suspected shoplifters in a chase involving high speeds and weaving through traffic. 467 S.W.3d 566, 569 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Another officer ahead of the chase deployed a spike strip. *Id.* The suspect car hit the spike strip, continued fleeing for about 200 feet, and then rear ended a car with two teenagers. *Id.* One of the teenagers died, and his family sued the city. *Id.* The appellate court held that the city was immune, found there was no nexus between use of the cruisers and injuries sustained by the victim, and observed that "[t]he plaintiffs concede that no police car was directly involved in the collision." *Id.* at 576.

Here, Rodriguez pled he was hit by Martinez, not Officer Monjaras, while Martinez was fleeing from Officer Monjaras. Rodriguez further pled that Officer Monjaras was at fault for pursuing Martinez. Such is insufficient to generate a nexus under section

6

101.021(1). Rodriguez failed to plead facts that Officer Monjaras's use of his cruiser "actually caused [his] injury," as opposed to merely "furnish[ing] the condition that [made his] injury possible." *See Lopez*, 2013 WL 4679062, at *6; *Whitley*, 104 S.W.3d at 543. Officer Monjaras was not required to "supervise" or "control" Martinez's reaction to an attempted traffic stop. *See Williams*, 467 S.W.3d at 576; *Whitley*, 104 S.W.3d at 543. Officer Monjaras's use of his cruiser to attempt a traffic stop alone was "too far attenuated from" and "too physically and temporally separated from" Martinez's driving through an intersection and collision with Rodriguez to constitute a cause of Rodriguez's injuries. *See Teague*, 344 S.W.3d at 439; *Hillis*, 308 S.W.3d at 535. It was Martinez's "decision to try to flee by darting out into" the intersection that "caused [Rodriguez's] injuries." *See Lopez*, 2013 WL 4679062, at *6. "The only connection between the use of" Officer Monjaras's cruiser "and [Rodriguez's] injuries is that [Officer Monjaras] was attempting to initiate a stop of the vehicle with which [Rodriguez] collided. That fact alone is nothing more than mere involvement of the official vehicle and is an insufficient nexus to result in a waiver of immunity." *See id.* "[N]o police car was directly involved in the collision." *See Williams*, 467 S.W.3d at 576.

## B. Counterarguments

Rodriguez first complains that Officer Monjaras engaged in a high-speed chase of Martinez, he should have known the risks associated with such, and he ignored those risks. However, Rodriguez provides no authority that injuries emanating from a collision between a pursued suspect and a third party are caused by use of the pursuing police cruiser under section 101.0201(1) when the pursuit involves high speeds. *See Hillis*, 308

S.W.3d at 529 (holding section 101.0201(1) nexus failed despite involving high speeds); *Teague*, 344 S.W.3d at 436 (same); *Williams*, 467 S.W.3d at 569 (same). Moreover, the Texas Supreme Court has acknowledged that "exceeding the speed limit is part and parcel of a police chase," *City of Austin v. Powell*, 704 S.W.3d 437, 458 (Tex. 2024). The court has additionally noted:

> [W]e are loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive *so recklessly* that they put other people's lives in danger . . . . Every fleeing motorist would know that escape is within his grasp, if only he accelerates to 90 miles per hour, crosses the double-yellow line a few times, and runs a few red lights.

*City of San Antonio v. Maspero*, 640 S.W.3d 523, 532 (Tex. 2022) (quoting *Scott v. Harris*, 550 U.S. 372, 385 (2007)).

Rodriguez second complains that Officer Monjaras's pursuit was prompted by a *minor traffic violation*—a nonfunctional license plate light—and continued after law enforcement *learned Martinez's license plate number*. However, Rodriguez provides no authority that injuries emanating from a collision between a pursued suspect and a third party are caused by use of a pursuing police cruiser under section 101.0201(1) when (1) the offense for which the suspect is pursued is insufficiently severe, or (2) a license plate number was ascertained. *See Teague,* 344 S.W.3d at 436 (finding the nexus under section 101.0201(1) failed where chase was initiated as a stop for lack of a registration sticker); *Williams,* 467 S.W.3d at 578–79 (finding the nexus under section 101.0201(1) failed where officers engaged in a dangerous, high-speed pursuit in heavy traffic after learning the suspect driver's identity).

Rodriguez third argues the *Ryder Integrated Logistics, Inc. v. Fayette County* decision requires a finding that there is a fact issue as to causation in this case. 453 S.W.3d 922, 926 (Tex. 2015). But in *Ryder*, the officer was not chasing a suspect who independently hit a third party. *Id.* The officer pulled over a motorist and positioned his cruiser facing oncoming traffic with his high beam lights blinding oncoming motorists. *Id*. As a result, a truck driver hit and killed the stopped motorist. *Id.* In *Ryder*, rather than furnishing a condition where an accident occurred, the officer was an alleged tortfeasor whose actions directly caused the truck driver's impaired driving that killed the motorist. *See id.* at 929.[2] Here, Rodriguez has not alleged that Officer Monjaras did anything to cause the collision other than pursue a traffic stop of Martinez.

Rodriguez fourth argues that *Travis v. City of Mesquite* requires a finding that a fact issue exists as to causation in this case. *See* 830 S.W.2d 94, 96 (Tex. 1992). Similar to this case, *Travis* involved the collision of a fleeing suspect with a motorist who thereafter sued the city for her injuries. *Id.* However, in that case, the city's counsel conceded that fact issues existed requiring reversal and remand for trial. *Id.* at 99. And the city merely asserted common law official immunity related to performance of discretionary acts rather than governmental immunity. *Id.* at 100. Thus, *Travis* is inapplicable to the present issue.[3]

---

[2] The plaintiff in *Williams v. City of Baytown* asserted the same argument based on *Ryder Integrated Logistics, Inc. v. Fayette County,* 453 S.W.3d 922, 926 (Tex. 2015) as Rodriguez. *See* 467 S.W.3d 566, 575 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Our sister court made the same distinguishments we make herein. *See id*.

[3] The plaintiff in *City of Dallas v. Hillis* asserted the same argument based on *Travis v. City of Mesquite*, 830 S.W.2d 94, 96 (Tex. 1992) as Rodriguez. *See* 308 S.W.3d 526, 534 (Tex. App.—Dallas 2010, pet. denied). Our sister court made the same distinguishments we make herein. *See id*. at 535.

## C.    Summary

In short, while officer Monjaras's use of his cruiser may have furnished a condition that made Rodriguez's injuries possible, Rodriguez failed to plead facts that his injuries were actually caused by Officer Monjaras's use of his cruiser under section 101.0201(1). *See Williams*, 467 S.W.3d at 569; *Lopez*, 2013 WL 4679062, at *2; *Teague*, 344 S.W.3d at 436; *Hillis*, 308 S.W.3d at 529; *Whitley*, 104 S.W.3d at 543. We sustain the City's first issue.

## IV.    EMERGENCY EXCEPTION TO IMMUNITY WAIVER

By its second issue, the City argues the emergency exception to the State's waiver of immunity applies. We agree. The relevant statute provides that governmental immunity is not waived related to

> claim[s] arising . . . from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others.

TEX. CIV. PRAC. & REM. CODE § 101.055(2).

We first address Rodriguez's counterargument that the foregoing statute is wholly inapplicable because there was no "emergency call" or "emergency situation" and second address whether Rodriguez sufficiently pled waiver of the State's immunity.

## A.    Emergency Call or Situation

Rodriguez avers that Officer Monjaras was not "responding to an emergency call or reacting to an emergency situation" because he initially attempted to stop Martinez for the minor offense of a nonfunctional license plate light. *See id.*

10

The Texas Supreme Court has broadly interpreted "emergency" under section 101.055(2) and cautioned "we cannot construe section 101.055(2) to exclude emergencies the Legislature might have intended to include." *City of San Antonio v. Hartman*, 201 S.W.3d 667, 673 (Tex. 2006) (rejecting appellate court's holding that "emergency" does not include "what might be colloquially referenced to as an 'emergency'" and holding government employees' decisions regarding where to erect traffic barricades during unprecedented flooding satisfied the "emergency" prong under section 101.055(2)). Similarly, the Houston Court of Appeals held section 101.055(2)'s "emergency" prong was satisfied by a collision that occurred while a police officer was trying to discern whether the dispatched call he was responding to was a true emergency. *Tex. Dep't of Pub. Safety v. Little*, 259 S.W.3d 236, 239 (Tex. App.—Houston [14th Dist.] 2008, no pet.). And the Fort Worth Court of Appeals held section 101.055(2)'s "emergency" prong was satisfied when two police cruisers following a leading cruiser ran over an arrestee who escaped from the leading cruiser (where officers originally picked up the arrestee for exhibiting combative behavior at the scene of a car wreck). *Pakdimounivong v. City of Arlington*, 219 S.W.3d 401, 406–07, 410 (Tex. App.—Fort Worth 2006, pet. denied). Under this broad standard, police pursuit of an evading suspect is unquestionably an "emergency situation" under section 101.055(2). *See Maspero*, 640 S.W.3d at 531–32 (explaining that allowing a suspect's flight may be more dangerous to the community than high speed pursuit).

Thus, we hold Officer Monjaras's pursuit of a fleeing Martinez, albeit originally initiated over a nonfunctional license plate light, satisfied the emergency prong under

11

section 101.055(2).

## B.    Pleading Sufficiency: Recklessness

Now, we address whether Rodriguez sufficiently pled waiver under section 101.055(2). Rodriguez identified two statutes that "apply to emergency action": Texas Transportation Code sections 546.001(3) and 546.005. *See* TEX. TRANSP. CODE §§ 546.001(3), 546.005. The former provides that "[i]n operating an authorized emergency vehicle the operator may . . . exceed a maximum speed limit, except as provided [under certain ordinances], as long as the operator does not endanger life or property." *Id.* § 546.001(3). The latter provides that operators of emergency vehicles are not relieved of the duty to "operate the vehicle with appropriate regard for the safety of all persons" or "the consequences of reckless disregard for the safety of others." *Id.* § 546.005.

However, the Texas Supreme Court has provided that the foregoing statutes do not convert the State's immunity waiver for recklessness into a waiver for mere negligence; thus, a successful plaintiff must still plead facts amounting to recklessness. *Powell*, 704 S.W.3d at 453–54, 458 (applying a recklessness standard to officer's "failure to control speed" after finding section 546.001 does not prohibit conduct but merely provides a list of "safe harbors" that, if satisfied by police, "remove any doubt that undertaking those actions is categorically permissible"); *City of Amarillo v. Martin*, 971 S.W.2d 426, 431 (Tex. 1998) (holding that section 546.005 merely imposes liability for reckless conduct); *Tex. Dep't of Pub. Safety v. Zakir*, 665 S.W.3d 884, 892 (Tex. App.—Houston [14th Dist.] 2023, no pet.) (explaining that "the Transportation Code does not

12

waive immunity for 'mere negligence'; a showing of recklessness is required").

Recklessness involves willful or wanton disregard for the safety of others. *Gomez*, 716 S.W.3d at 165. A "momentary judgment lapse" or "inattentiveness" is not enough. *Id.* at 165–66. In the police immunity context, "we must tread carefully" for certain police work involves "obvious risk of serious injury to bystanders" but is necessary to prevent "even greater danger to the community." *Maspero*, 640 S.W.3d at 531. As a result, "[l]aw enforcement must retain discretion to assess and balance these risks using reasoned judgment." *Id.* Thus, we consider whether the officer engaged in "some degree of risk assessment." *Id.* at 532.

In *Powell*, two officers in separate cruisers responded to a welfare check and heard shots fired. 704 S.W.3d at 446. While pursuing a suspect car leaving the location of the shots, the leading officer slowed to make a turn, the following officer was unable to slow down in time and collided with the leading cruiser, the officers lost control of their cruisers, and one cruiser impacted a car stopped at a stop sign. *Id.* The crash report cited the following officer's inattention and failure to control speed as contributing causes of the accident. *Id.* The *Powell* court found that there was no showing of recklessness related to the officer's "failure to control speed." *Id.* at 458. The court opined:

> We do not hold that excessive speed is categorically a matter of only negligence that never could be relevant to recklessness. Adverse weather conditions, roadworks, or the presence of pedestrians could make some speeds reasonable or negligent in one chase but inordinately risky and reckless in another. As *Maspero* observed, speeding is ordinarily "part and parcel of a police chase," so deeming speed in and of itself to raise a fact question about recklessness in such cases would be exceptional. Absent any evidence as to [the officer's] speed in the context of this chase, we decline to hold that this is one of the exceptional cases. *At most, in the context of a pursuit, there could be a question only of negligence—a*

13

*momentary lapse in judgment within a chase that inherently would involve high speed*. Momentary lapses in judgment are not grounds for finding recklessness. There is simply no evidence in the record that under any test for recklessness the alleged "failure to control speed" would qualify.

*Id.* (citations omitted) (emphasis added).

Here, Rodriguez merely pled that Officer Monjaras should have ceased high speed chase of Martinez. However, excess speed alone in the context of a police pursuit may rise to no more than a mere lapse in judgment, not recklessness. *See id*. Rodriguez failed to plead other facts that—in conjunction with Officer Monjaras's speed—may equate to recklessness such as "[a]dverse weather conditions, roadworks, or the presence of pedestrians." *See id*. Thus, Rodriguez's pleading fails to aver facts that, taken as true, give rise to a claim for which the State has waived its immunity. We sustain the City's second issue.

## V. OFFICIAL IMMUNITY

By its third issue, the City argues for the first time on appeal that it is immune because Officer Monjaras enjoyed official immunity for the actions complained of by Rodriguez. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(1)(B) (providing that governmental immunity is only waived related to a government employee's conduct where the employee would also be personally liable for the same under law). We disagree. "[O]fficial immunity is an affirmative defense that must be pleaded and proved . . .; otherwise, the defense is lost." *City of Houston v. Rodriguez*, 704 S.W.3d 462, 469 (Tex. 2024). Here, the City did not plead official immunity as an affirmative defense and moreover did not address such in its plea. Thus, we overrule the City's third

14

issue. *See Rodriguez*, 704 S.W.3d at 469.

## VI.    REMEDY

The City argues that Rodriguez failed to respond to its plea with jurisdictional evidence and, therefore, asserts this Court should render judgment dismissing this case for lack of jurisdiction. *See Powell,* 704 S.W.3d at 447–48, 462 (providing that where a defendant challenges the existence of jurisdictional facts in its plea, the case shall be dismissed unless the plaintiff produces evidence generating a fact issue for jurisdiction). However, we do not find a challenge to the existence of jurisdictional facts in the City's plea but merely a challenge to pleadings. Moreover, Rodriguez's pleading does not affirmatively provide that (1) Rodriguez's injuries could not have been caused by Officer Monjaras's use of his cruiser under section 101.0201(1) or (2) Officer Monjaras could not have engaged in conduct equating to recklessness under section 101.055(2). Thus, the correct remedy is to reverse the trial court's denial of the City's plea and remand to provide Rodriguez an opportunity to amend his pleading. *See Tex. Tech Univ. Sys. v. Martinez,* 691 S.W.3d 415, 425 (Tex. 2024) (reversing and remanding for an opportunity to re-plead where pleadings did not affirmatively foreclose jurisdiction); *Miranda*, 133 S.W.3d at 226–27.

## VII.    CONCLUSION

We find Rodriguez's pleading fails to assert facts sufficient to establish a waiver of immunity under both the general waiver of governmental immunity statute and the emergency exception statute. *See* TEX. CIV. PRAC. & REM. CODE §§ 101.021, 101.055(2).

15

We reverse the trial court's judgment and remand the case for further proceedings.

JON WEST
Justice

Delivered and filed on the
19th day of March, 2026.

16